UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| **In re:** | **CASE NO. 6:12-bk-14459-KSJ** |
| **LIGHTHOUSE IMPORTS, LLC,** | **CHAPTER 11** |
| Debtor. _____/ | |
| **LIGHTHOUSE IMPORTS, LLC,** | |
| Plaintiff, | |
| vs. | **Adv. Case No. 2013-ap-** |
| **CURTIS G. WERNER, an individual,** | |
| Defendant. _____/ | |

## COMPLAINT

Plaintiff, **LIGHTHOUSE IMPORTS, LLC**, debtor-in-possession ("Debtor" or "Lighthouse"), by and through its undersigned attorneys, hereby sues Defendant, Curtis G. Werner, an individual ("Werner"), pursuant to 11 U.S.C. §§ 105, 502, and 510, Rule 7001 of the Federal Rules of Bankruptcy Procedure, and objects to proof of claim no. 42 filed by Werner, and in support thereof states as follows:

### NATURE OF ACTION

1.  This is an adversary proceeding to: (i) subordinate Werner's unsecured claim (proof of claim number 42, the "Claim") that arises out of the Interest Purchase Agreement by and between Howard F. Hubler, Werner TSA, LLC ("TSA"), Lighthouse, and

Flawwoods, LLC pursuant to 11 U.S.C. §510(b) to the level of equity; (ii) recharacterize the Claim as capital contributions to Lighthouse; and (iii) object to the Claim for the reasons noted herein.

## JURISDICTION, VENUE AND PARTIES

2. On October 24, 2012 ("Petition Date"), Lighthouse filed its voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code. No trustee or examiner has been appointed, and Lighthouse is administering its case as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3. The Debtor owned and operated a car dealership in St. Johns County, Florida, selling new Toyota and Scion automobiles and numerous brands of pre-owned vehicles under the fictitious name of St. Augustine Toyota/Scion (the "Dealership"). The Dealership originally opened in 1976. In 2005, the Dealership was expanded to include a new state-of-the-art sales, service, and parts center. The Dealership had a 6-car showroom, modern service department, and an automotive parts boutique. Customers were able to utilize a shuttle service, rental cars, Wi-Fi, a beverage bar, and a children's play area when visiting the dealership. The principal place of business of the company was 2995 US Highway 1 S., St. Augustine, Florida.

4. TSA is a Florida limited liability company with its principal place of business located at 200 Mansell Court East, Suite 510, Roswell, Georgia 30076.

5. Werner is an individual who is *sui juris*, is the managing member of TSA, and transferred money to Lighthouse pursuant to the Interest Purchase Agreement by and between Howard F. Hubler, TSA, Lighthouse, and Flawwoods, LLC (the "IPA").

6. Howard F. Hubler ("Hubler") is an individual who owns ninety-eight percent (98%) of the Class A Membership Interests in Lighthouse and is the managing member of Lighthouse.

7. Flawwoods, LLC ("Flawwoods") is a Florida limited liability company which owns two percent (2%) of the Class A Membership Interests in Lighthouse.

8. This Court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. §§1334 and 157.

9. Venue is proper in this district under 28 U.S.C. § 1409.

10. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A), (B) and (O).

## PROCEDURAL AND FACTUAL BACKGROUND

### THE DEBTOR'S BUSINESS

11. Lighthouse acquired the Dealership in September 2007. Lighthouse purchased the business and real property for approximately $29.8 million, not including the amounts paid for new and used vehicles. To finance the purchase and vehicle inventory of the dealership, the Debtor entered into three loan agreements with World Omni Financial Corporation ("WOFCO"), as follows: (i) Loan Agreement dated September 11, 2007,

pursuant to which WOFCO made a loan to the Debtor in the original principal amount of $6,000,000 (as amended, the "Capital Loan Agreement"); (ii) Wholesale Floor Plan Security Agreement dated September 11, 2007, pursuant to which WOFCO financed the acquisition of certain vehicle inventory for the Debtor (as amended, the "Floor Plan Loan Agreement"); and (iii) Loan Agreement dated September 11, 2007, pursuant to which WOFCO made a mortgage loan to LHT Real Estate, LLC ("LHT"), an entity affiliated with the Debtor and the owner of the real estate upon which the Debtor conducts its business, in the original principal amount of $14,500,000 (the "Mortgage Loan"), which the Debtor guaranteed (all three WOFCO loans together, the "WOFCO Loans").

12.     Beginning in late 2009 and continuing through 2011, Lighthouse's operations were negatively impacted by three significant events: (i) the Great Recession and stricter lending standards depressed the automotive market causing the Debtor to suffer significant declines in sales; (ii) the widespread concern in the marketplace regarding alleged "unintended acceleration" defects in specific Toyota brand vehicles; and (iii) the March 2011, the tsunami that devastated parts of Japan had the added effect of interrupting the vehicle supply chain for Toyota dealerships.

13.     As of December 2010, Lighthouse only had taxable income in the amount of $53,911, and as December 2011, Lighthouse had a loss of $1,055,653. From January through October 2012, Lighthouse had net income in the amount of $658,534. As of October

2012, Lighthouse had total assets of $9,479,531, and had total liabilities, including the Mortgage Loan, in the approximate amount of $27,012,020.

### THE IPA AND MANAGEMENT AGREEMENT

14. During 2011, Lighthouse, Hubler and TSA began discussions regarding TSA's purchase of a percentage of the Class A Membership Interests in Lighthouse. On or about August 24, 2011, Hubler, TSA, Lighthouse and Flawwoods executed the IPA whereby TSA would purchase a forty-three percent (43%) Class A Membership Interest from Hubler for a cash payment of $43,000.00 ("Cash Payment") and a $1,457,000.00 ("Capital Payment") (together, the "Consideration") investment in Lighthouse to be recorded as paid in capital on the books of Lighthouse. A copy of the IPA, including all six amendments, is attached hereto as **Composite Exhibit "A"** and is incorporated herein by reference.

15. As set forth in the IPA, in addition to the Consideration, TSA would "lend" Lighthouse $300,000.00, evidence by a promissory note ("Promissory Note") and guaranteed by Hubler. The purpose of the $300,000.00 was to enable Lighthouse to meet its short term operating needs. Upon the closing of the IPA, TSA would receive a credit against the Capital Payment equal to the outstanding amount due under the Promissory Note.

16. In connection with the IPA discussions, on or around August 24, 2011, the Debtor and Werner entered into the Lighthouse Imports LLC's Management Agreement ("Management Agreement") setting forth the terms and conditions under which TSA would temporarily manage the day-to-day operations of the Dealership. On January 19, 2012, the

parties executed a First Amendment to the Management Agreement (the "Amendment"), modifying the term of the Management Agreement. A copy of the Management Agreement and the Amendment is attached hereto as **Composite Exhibit "B"** and is incorporated herein by reference

17. As set forth in the IPA and the Management Agreement, TSA was to provide up to a $300,000 "loan" to Lighthouse for use as working capital (as necessary), while TSA would temporarily manage the Dealership and collect a management fee based on fifty-eight percent (58%) of the Dealership's monthly Net Income (as defined in the Management Agreement).

18. The Amendment modified Section 4 of the Management Agreement such that the term of the Management Agreement ended only upon the earlier of: (i) the denial by Toyota Motor Sales, Inc. or Southeast Toyota (together, "Toyota") of TSA's purchase of forty-three percent (43%) interest in the Debtor pursuant to the IPA and the Debtor's payment in full of that certain Amended Promissory Note dated January 19, 2012 (the "Note"); or (ii) upon the Closing as defined in the IPA.

19. On or about August 21, 2011, Lighthouse executed a Demand Promissory Note in favor of Werner in the amount of $300,000.00 (the "Werner Note"). As set forth in the Werner Note, the $300,000.00 was advanced to Lighthouse in connection with TSA's purchase of forty-three percent (43%) interest in Lighthouse pursuant to the IPA. A copy of

the Werner Note is attached hereto as **Composite Exhibit "C"** and is incorporated herein by reference.

20. The terms of the Werner Note are as follows: (i) interest will accrue from the date of execution at the rate of five percent (5%) per annum until paid or until default; (ii) principal and interest will be due and payable on demand or thirty (30) days after termination of the Management Agreement or an event of default, as defined in the Werner Note; and (iii) the termination of the IPA is an event of default which would cause the Werner Note to be due.

## WOFCO AND THE EQUITY SALE

21. On or about September 23, 2011, WOFCO, Lighthouse, LHT, and Hubler entered into a non-binding indicative proposal, which was contingent on the consummation of the IPA in an amount and manner, and on terms and conditions that were acceptable to WOFCO in its sole discretion (the "Proposal"). The Proposal was intended to serve as a basis for additional discussions on the potential negotiation of loan modification agreements to the WOFCO Loans. Any modifications to the WOFCO Loans would be subject to, among other things, the following:

   a. The IPA and all related transactions must be approved by Southeast Toyota Distributors ("SET") and Toyota Motor Sales ("TMS"), and the amount of the Consideration must be no less than the greater of (a) $1.5 million or (b) an amount necessary to satisfy SET's net working capital requirement for the Dealership;

b. The General Manager of the Dealership must be approved by SET;

c. TSA and its owners must be acceptable to WOFCO from a credit underwriting perspective and have sufficient resources to inject future capital, if needed; and

d. TSA must provide its corporate guaranty to WOFCO under the Floor Plan Loan Agreement limited to $1 million.

22. As part of the Proposal, Hubler executed a Hold Harmless Agreement that permitted WOFCO to discuss the status of amounts due from Lighthouse to WOFCO and to disclose confidential financial information regarding Lighthouse with representatives of TSA.

23. On or about September 28, 2011, Hubler, Lighthouse and TSA executed a First Amendment to Interest Purchase Agreement (the "First IPA Amendment"). In pertinent part, the First IPA Amendment modified Section 1.6 of the IPA as follows:

> A. The Inspection Period has expired; accordingly, sub-paragraphs 1.6(c) and (d) are hereby deemed satisfied and a new sub-paragraph (f) shall be added thereto entitled **"Loan Modification"** which states: "The Parties agree that the proposed loan modification terms set forth in that certain World Omni Financial Corp. St. Augustine Toyota Indicative Proposal dated September 23, 2011, a copy of which is attached hereto as Exhibit "A" (the "Term Sheet"), are mutually acceptable, but that Lender's delivery of loan modification documents consistent with the Term Sheet prior to Closing shall be a condition precedent for Purchaser's obligation to Close."

24. On or about September 30, 2011, Lighthouse, Hubler, LHT and WOFCO entered into a Forbearance Agreement (the "First Forbearance Agreement") pursuant to

which WOFCO agreed to forbear from exercising certain of its rights under the WOFCO Loans during the period from September 30, 2011 to November 30, 2011.

25.  On or about November 30, 2011, Hubler, Lighthouse and TSA executed a Second Amendment to Interest Purchase Agreement (the "Second IPA Amendment"). In pertinent part, the Second IPA Amendment extended the Closing Date under the IPA to January 31, 2012.

26.  On December 2, 2011, WOFCO agreed to extend the First Forbearance Agreement until January 15, 2012, to permit the parties to continue progress on closing the transactions contemplated in the IPA.

27.  On or about December 15, 2011, Hubler, Lighthouse and TSA executed a Third Amendment to Interest Purchase Agreement (the "Third IPA Amendment"). In pertinent part, the Third IPA Amendment incorporated an agreed upon new Amended and Restated Operating Agreement for Lighthouse.

28.  On January 19, 2012, WOFCO sent a letter to Hubler, Lighthouse and LHT regarding the Proposal, the First Forbearance Agreement and the IPA (the "January Letter"). A copy of the January Letter is attached hereto as **Exhibit "D"** and is incorporated herein by reference. The January Letter agreed to extend the forbearance period until March 30, 2012, and defer mortgage principal under the Mortgage Loan beginning January 2012, upon the following terms and conditions, without limitation:

    a.    Immediate capital injection of $250,000 into Lighthouse by TSA or Werner by no later than 2:00 p.m. on January 19, 2012;

    b.    Additional minimum capital injections of $150,000 by no later than the 19th of each following month until the transactions contemplated by the IPA close or the IPA is terminated;

    c.    Such capital injections shall be in the form of bridge loan on the same terms and conditions as the prior bridge loans made by Werner;

    d.    Agreement by LHT (or if LHT has insufficient funds, Lighthouse) to pay deferred principal due under the Mortgage Loan at closing of the IPA;

    e.    Satisfactory progress toward closing the transactions under the IPA, which will be determined in WOFCO's sole discretion;

    f.    Execution of deferral documents for the Mortgage Loan in form and substance satisfactory to WOFCO in its sole discretion; and

    g.    Lighthouse is responsible for all legal fees incurred by WOFCO.

    29.    On or about January 19, 2012, Lighthouse executed an Amended and Restated Demand Promissory Note in favor of Werner in the amount of $650,000.00 (the "Amended Werner Note"). As set forth in the Amended Werner Note, the additional $350,000.00 was advanced to Lighthouse in connection with the IPA and the January Letter. A copy of the Amended Werner Note is attached hereto as **Composite Exhibit "C"** and is incorporated herein by reference.

30.     The terms of the Amended Werner Note are as follows: (i) interest will accrue from the date of execution at the rate of five percent (5%) per annum until paid or until default; (ii) principal and interest will be due and payable on demand or thirty (30) days after termination of the Management Agreement or an event of default, as defined in the Amended Werner Note; and (iii) the termination of the IPA is an event of default which would cause the Amended Werner Note to be due.

31.     On or about January 19, 2012, Hubler, Lighthouse and TSA executed a Fourth Amendment to Interest Purchase Agreement (the "Fourth IPA Amendment"). In pertinent part, the Fourth IPA Amendment extended the Closing Date under the IPA to April 15, 2012.

32.     On or about February 17, 2012, Lighthouse executed a Second Amended and Restated Demand Promissory Note in favor of Werner in the amount of $800,000.00 (the "Second Amended Werner Note"). As set forth in the Second Amended Werner Note, the additional $150,000.00 was advanced to Lighthouse in connection with the IPA and the January Letter. A copy of the Second Amended Werner Note is attached hereto as **Composite Exhibit "C"** and is incorporated herein by reference.

33.     The terms of the Second Amended Werner Note are as follows: (i) interest will accrue from the date of execution at the rate of five percent (5%) per annum until paid or until default; (ii) principal and interest will be due and payable on demand or thirty (30) days after termination of the Management Agreement or an event of default, as defined in

the Second Amended Werner Note; and (iii) the termination of the IPA is an event of default which would cause the Second Amended Werner Note to be due.

34.     On or about March 19, 2012, Lighthouse executed a Third Amended and Restated Demand Promissory Note in favor of Werner in the amount of $950,000.00 (the "Third Amended Werner Note"). As set forth in the Third Amended Werner Note, the additional $150,000.00 was advanced to Lighthouse in connection with the IPA and the January Letter. A copy of the Third Amended Werner Note is attached hereto as **Composite Exhibit "C"** and is incorporated herein by reference.

35.     The terms of the Third Amended Werner Note are as follows: (i) interest will accrue from the date of execution at the rate of five percent (5%) per annum until paid or until default; (ii) principal and interest will be due and payable on demand or thirty (30) days after termination of the Management Agreement or an event of default, as defined in the Third Amended Werner Note; and (iii) the termination of the IPA is an event of default which would cause the Third Amended Werner Note to be due.

36.     On or about April 3, 2012, WOFCO agreed to extend the forbearance period under the First Forbearance Agreement until May 15, 2012, to permit the parties to continue progress on closing the transactions contemplated in the IPA.

37.     On or about April 19, 2012, Lighthouse executed a Fourth Amended and Restated Demand Promissory Note in favor of Werner in the amount of $1,100,000.00 (the "Fourth Amended Werner Note"). As set forth in the Fourth Amended Werner Note, the

additional $150,000.00 was advanced to Lighthouse in connection with the IPA and the January Letter. A copy of the Fourth Amended Werner Note is attached hereto as **Composite Exhibit "C"** and is incorporated herein by reference.

38. The terms of the Fourth Amended Werner Note are as follows: (i) interest will accrue from the date of execution at the rate of five percent (5%) per annum until paid or until default; (ii) principal and interest will be due and payable on demand or thirty (30) days after termination of the Management Agreement or an event of default, as defined in the Fourth Amended Werner Note; and (iii) the termination of the IPA is an event of default which would cause the Fourth Amended Werner Note to be due.

39. On or about April 19, 2012, Hubler, Lighthouse and TSA executed a Fifth Amendment to Interest Purchase Agreement (the "Fifth IPA Amendment"). In pertinent part, the Fifth IPA Amendment extended the Closing Date under the IPA to June 15, 2012.

40. On or about June 4, 2012, WOFCO sent a letter to Hubler, Lighthouse and LHT regarding the Proposal, the First Forbearance Agreement and the IPA (the "June Letter"). A copy of the June Letter is attached hereto as **Exhibit "E"** and is incorporated herein by reference. The June Letter agreed to extend the forbearance period until July 15, 2012, upon the following terms and conditions, without limitation:

> TSA or Werner [are required] to make additional minimum capital injection of $150,000 into Dealership by no later than the 19th of each following month through and including April 19, 2012, and thereafter TSA or Werner will make such additional capital injections into Dealership as needed to fund all cash requirements of the Dealership through closing of the IPA or until the IPA is terminated.

41.    On or about June 14, 2012, Hubler, Lighthouse and TSA executed a Sixth Amendment to Interest Purchase Agreement (the "Sixth IPA Amendment"). In pertinent part, the Sixth IPA Amendment extended the Closing Date under the IPA to August 1, 2012.

42.    On or about July 25, 2012, negotiations by and between WOFCO, SET, TSA, Werner, Hubler and Lighthouse began to deteriorate over the IPA, the new form of operating agreement for Lighthouse, and the lease between Lighthouse and LHT. On or about July 30, 2012, counsel for Hubler sent a letter to SET outlining the parties' concerns to SET's suggested revisions to the Restated and Amended Operating Agreement for Lighthouse. However, WOFCO, SET, Lighthouse, Hubler, TSA and Werner were unable to resolve the dispute and the IPA failed to close.

43.    As a result of the failure to close the IPA, the forbearance period for the Mortgage Loan expired on July 15, 2012, and the full amount of the deferred monthly principal payments ($256,119.11) under the Mortgage Loan became immediately due to WOFCO.

44.    In addition, on August 1, 2012, the IPA terminated by its own terms and conditions, and no new amendments were executed by the parties. Even though the IPA was terminated, TSA continued to manage the Dealership pursuant to the Management Agreement.

45.    On August 8, 2012, Lighthouse, LHT, Hubler, and WOFCO executed a Forbearance Agreement with the respect to the WOFCO Loans (the "Second Forbearance

Agreement"). Pursuant to the Second Forbearance Agreement, Lighthouse, LHT, and Hubler requested until September 10, 2012, to progress towards a Financing Arrangement.

46. On or about August 21, 2012, SET sent a letter to Hubler advising him that the proposed ownership change of Lighthouse, as set forth in the IPA, was being declined, and that no further action would be taken by SET unless and until an Amended and Restated Operating Agreement of Lighthouse that met the voting control requirement and policies of TMS and SET was submitted to SET. In addition, SET also advised Hubler that Lighthouse was in breach of the of the Toyota Dealer Agreement due to the unauthorized change in management of the Dealership and due to the fact that the Dealership did not meet the requirements of the Net Working Capital Addendum to the Toyota Dealer Agreement.

47. On January 15, 2013, Werner filed the Claim in the amount of $1,156,657.56. According to Werner, the basis for the Claim are the alleged "loans" made by Werner to Lighthouse from August 2011 to April 2012. Lighthouse disputes the Claim and believes the Claim should either be: (i) subordinated to the level of equity pursuant to 11 U.S.C. §510(b) because the Claim is for damages arising from the purchase of membership interests in Lighthouse; or (ii) recharacterized as capital contributions to Lighthouse because the nature of the transactions which give rise to the Claim. A copy of the Claim and its attachments are attached hereto as **Composite Exhibit "C"** and are incorporated herein by reference.

48.     On April 1, 2013, TSA and Werner filed a complaint against WOFCO, TMS, and SET in the Circuit Court of the Seventh Judicial Circuit in and for St. Johns County, Florida, case no. CA-13-0603-55 (the "Werner Complaint") seeking in excess of $1,500,000.00 in damages. In the Werner Complaint, TSA and Werner allege lender liability, breach of implied covenant of good faith and fair dealing, fraud, tortious interference with business relationship, duress, prima facie tort, unjust enrichment, equitable estoppel, and violation of Fla. Stat. §§ 320.60-70.

49.     In the Werner Complaint, Werner and TSA make the following allegations against WOFCO, SET, and TMS:

a.     WOFCO acted in bad faith and through conscious and deliberate acts including false statements obtained money from Werner and TSA by conditioning its continued forbearance on the injection of capital into Lighthouse, which capital Lighthouse utilized in part to make payments to WOFCO;

b.     WOFCO and SET intended to induce Werner and TSA to inject capital into Lighthouse so that Lighthouse would have the ability to continue to make payments to WOFCO;

c.     Werner and TSA have also suffered special damages in the form of lost profits and future income as a result of the wrongful termination of the IPA; and

d.     WOFCO intentionally and unjustifiably interfered with Werner and TSA's relationships with Lighthouse and Hubler by arbitrarily terminating the Forbearance

Agreement thereby forcing Lighthouse into bankruptcy and thereby depriving Werner of the benefit of his financial investment in Lighthouse.

## COUNT I.
## SUBORDINATION OF WERNER'S
## CLAIM PURSUANT TO 11 U.S.C. §510(b)

50.     Lighthouse re-asserts and re-alleges paragraphs 1 through 49 above, as if fully set forth herein.

51.     Pursuant to the IPA, TSA would purchase forty-three percent (43%) of the Class A Membership Interests in Lighthouse from Hubler for a total of $1.5 million, which would be recorded as paid in capital on the books of Lighthouse. The membership interests in Lighthouse are "securities" as contemplated by Section 510(b) and as defined by Section 101(49) of the Bankruptcy Code.

52.     From August 2011 through April 2012, Werner transferred $1,100,000.00 in "capital injections" to Lighthouse as required by the IPA and the January Letter. As provided for by the IPA and the January Letter, the capital injections were in the form of bridge loans on the same terms and conditions as the prior bridge loans made by Werner. The promissory notes which were issued to Werner are "securities" as contemplated by Section 510(b) and as defined by Section 101(49)(A)(I) of the Bankruptcy Code.

53.     In the Claim, Werner is seeking recovery for damages arising from the purchase or sale of a security and not just for debt based on the promissory notes. The Fourth

Amended Werner Note in the amount of $1,100,000.00 represents all the amounts which were advanced to Lighthouse as capital injections pursuant to the IPA and the January Letter.

54. The Claim is not based solely on enforcement of a debt instrument, but rather is an attempt by an equity investor to elevate his creditor status on par with unsecured creditors.

**WHEREFORE,** Lighthouse Imports LLC respectfully requests that this Court enter an order against Curtis G. Werner: (i) subordinating the Claim pursuant to 11 U.S.C. §510(b) to all claims or interests that are senior to or equal the claim or interest represented by such security; and (ii) for such other and further relief as the Court deems just and proper.

## COUNT II.
## RECHARACTERIZATION OF CLAIM AS EQUITY

55. Lighthouse re-asserts and re-alleges paragraphs 1 through 49 above, as if fully set forth herein.

56. From August 2011 through April 2012, Werner transferred $1,100,000.00 in "capital injections" to Lighthouse as required by the IPA and the January Letter. At the time of these capital injections: (i) Lighthouse was insolvent and remained insolvent even after the capital infusion; (ii) Werner's expectation of repayment could only reasonably be based upon the success of the Dealership; (iii) although the capital infusions were labeled bridge loans, the parties' intent was that these funds would be treated as advances under the IPA; and (iv) during this entire time and until the time of repayment of the advances, Werner through TSA was in control of Lighthouse pursuant to the Management Agreement.

57. The Claim should be recharacterized as equity based on the parties intent, the IPA, the January Letter, and the economic reality of the transaction.

**WHEREFORE,** Lighthouse Imports LLC respectfully requests that this Court enter an order against Curtis G. Werner: (i) recharacterizing the Claim as equity in Lighthouse; and (ii) for such other and further relief as the Court deems just and proper.

### COUNT III.
### OBJECTION TO CLAIM NO. 42

58. Debtor re-incorporates and re-alleges paragraphs 1 through 57 as set forth above.

59. Lighthouse objects to the Claim pursuant to 11 U.S.C. §502(b), and requests the Claim be disallowed in toto until the Court determines whether the Claim should be subordinated pursuant to 11 U.S.C. §510(b) or recharacterized as equity, as alleged in this complaint.

60. Bankruptcy Rule 3001(f) provides that a proof of claim executed and filed in accordance with the Bankruptcy Rules "shall constitute prima facie evidence of the validity and amount of the claim." The burden of proof is on the objecting party to produce evidence equivalent in probative value to that of the creditor to rebut the prime facie effect of the proof of claim. However, "the ultimate burden of persuasion is always on the claimant." In re Holm, 931 F.2d 620, 623 (9th Cir. 1991) (citing 3 L. King, Collier on Bankruptcy § 502.02, at 502-22 (15th ed. 1991) (footnotes omitted)); see also In re Leatherland Corp. 302 B.R.

250, 259 (Bankr. N.D. Ohio 2003). A properly supported objection to a claim initiates a contested matter under the Bankruptcy Rules. See Fed. R. Bankr. P. 3007 (adv. comm. note).

**WHEREFORE,** Lighthouse Imports LLC respectfully requests that this Court enter an order against Curtis G. Werner: (i) disallowing any and all claims by Curtis G. Werner; or any amount owed to Curtis G. Werner according to the Debtor's schedules under 11 U.S.C. §502(b), until the Court determines whether the Claim should be subordinated pursuant to 11 U.S.C. §510(b) or recharacterized as equity; and (ii) for such other and further relief as the Court deems just and proper.

**RESPECTFULLY SUBMITTED** this 24 day of April, 2013.

/s/ Mariane Dorris
R. Scott Shuker, Esquire
Florida Bar No.: 984469
Mariane L. Dorris
Florida Bar No. 0173665
**LATHAM, SHUKER, EDEN & BEAUDINE, LLP**
111 N. Magnolia Avenue, Suite 1400
Orlando, Florida 32801
Telephone: (407) 481-5800
Facsimile: (407) 481-5801
Attorneys for Lighthouse Imports LLC