## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

In re:                                                  **CASE NO. 6:12-bk-14459-KSJ**

**LIGHTHOUSE IMPORTS, LLC,**                            **CHAPTER 11**

                **Debtor.**

_____/


**LIGHTHOUSE IMPORTS, LLC,**

       **Plaintiff,**

vs.
                                                        **Adv. Case No. 2013-ap-00071**

**CURTIS G. WERNER, an individual,**

       **Defendant.**

_____/

### AMENDED NOTICE OF FILING

      **LIGHTHOUSE IMPORTS, LLC.** ("Lighthouse" or "Plaintiff"), by and through its undersigned counsel, hereby gives notice of filing of the following Exhibits to Complaint filed by Lighthouse Imports, LLC against Curtis G. Werner, Adversary Case No.: 6:13-ap-00071.

      **EXHIBIT "A", COMPOSITE EXHIBIT "B", COMPOSITE EXHIBIT "C", EXHIBIT "D"; and, EXHIBIT "E"**

### CERTIFICATE OF SERVICE

      **I HEREBY CERTIFY** that a true copy of the **AMENDED NOTICE OF FILING** has

been furnished by Federal Express postage prepaid, to:  **Lighthouse Imports, LLC**, Attn:

Howard F. Hubler, President, 2995 US Highway 1 S., St. Augustine, Florida 32086; **C. Curtis**

**Werner, c/o Werner, TSA, LLC**, 200 Mansell Court, Suite 510, Roswell, Georgia 30076, this

24th day of April 2013.

/s/Mariane L. Dorris
R. Scott Shuker, Esquire
Florida Bar No.: 984469
Mariane L. Dorris, Esquire
Florida Bar No.: 0173665
**Latham, Shuker, Eden & Beaudine, LLP**
111 North Magnolia Avenue, Suite 1400
Orlando, FL 32801
Telephone: (407) 481-5800
Facsimile:  (407) 481-5801
Attorneys for Lighthouse Imports, LLC

INTEREST PURCHASE AGREEMENT

THIS INTEREST PURCHASE AGREEMENT (this "Agreement") is made and entered into with an effective date of August 2▢, 2011 ("Effective Date") by and between HOWARD F. HUBLER ("Seller"), WERNER TBA, LLC, a Florida limited liability company and/or its assigns ("Purchaser"), LIGHTHOUSE IMPORTS, LLC, a Florida limited liability (the "Company"), FLAWWOODS, LLC, a Florida limited liability company ("Flawwoods")(for the purposes of Section 1.4(a)(iv) of this Agreement) and Mark L. Ornstein, Esq. of KILLGORE, PEARLMAN, STAMP, ORNSTEIN & SQUIRES, P.A. ("Escrow Agent")(for the purpose of Section 2 of this Agreement).

### RECITALS:

A.     The Company is doing business as St. Augustine Toyota Scion located at 2995 U.S. Highway 1 S., St. Augustine, Florida 32086 (the "Dealership");

B.     Seller owns a 98% Class A Membership Interest in the Company;

C.     Flawwoods owns a 2% Class A Membership Interest in the Company;

D.     Seller desires to sell, and Purchaser desires to purchase a 43% Class A Membership Interest with 430 Class A Membership Units in the Company (the "Interest") for a Cash Payment of Forty-three Thousand and No/100 Dollars ($43,000.00), and a One Million Four Hundred Fifty-seven and No/100 Dollars ($1,457,000.00) investment in the Company to be recorded as paid in capital on the books of Company, such payment and investment to be deemed sufficient consideration hereunder, and made on the terms set forth in this Agreement; and

E.     Purchaser and Seller desire to make certain other representations, warranties and agreements in accordance with the transaction contemplated in this Agreement.

NOW, THEREFORE, for and in consideration of the foregoing premises (which are hereby incorporated into this Agreement) and the representations, warranties and agreements contained herein and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereby agree as follows:

### SECTION ONE

### PURCHASE AND SALE OF INTEREST; CLOSING.

1.1.     Transfer of Interest.  Subject to the terms of this Agreement, at the Closing (as defined herein), Seller will sell and transfer the Interest to Purchaser.

1.2.     Consideration.  As consideration to Seller for the sale of the Interest, Purchaser shall pay Forty-three Thousand and No/100 Dollars ($43,000.00)(the "Cash Payment") to Seller, and agrees to pay to the Company, to be recorded as paid in capital on the books of Company, One Million Four Hundred Fifty-seven and No/100 Dollars ($1,457,000.00)(the "Paid in Capital")(together, the "Consideration").  Simultaneously with execution of this Agreement, Purchaser is lending the Company Three Hundred Thousand and No/100 Dollars ($300,000.00)

Interest Purchase Agreement
Lighthouse Imports, LLC

ORLDOCS 12242863 2

EXHIBIT "A"

as evidenced by a promissory note (the "Promissory Note") and as guaranteed by Seller. The Three Hundred Thousand and No/100 Dollars ($300,000.00) proceeds from the Note is being lent to the Company to meet its short term operating needs. Purchaser shall receive a credit against the Purchase Price equal to the outstanding amount due under the Promissory Note at Closing which shall be used to reduce the amount of Paid in Capital due at Closing. Purchaser shall return the original Promissory Note to the Company at Closing marked paid in full. Purchaser shall immediately pay the Paid in Capital at Closing to an operating account for the Company established by Purchaser for the exclusive use and benefit of the Company. Seller shall immediately pay the Cash Payment at Closing to an operating account for the Company established by Purchaser for the exclusive use and benefit of the Company. Seller acknowledges and understands that Purchaser would not pay the Consideration for the Interest in the Company unless the Cash Payment and the Paid in Capital were being paid immediately to an operating account for the exclusive benefit of the Company and subject to the exclusive control of the Company's Manager.

1.3. Closing. The purchase and sale of the Interest provided for in this Agreement (the "Closing") shall take place five (5) business days following receipt of the final "Manufacturer" approval needed for the transaction, but in no event later than November 30, 2011 (the "Closing Date"). The Closing documents shall be in form mutually agreeable to the parties. Closing shall take place at the offices of Killgore, Pearlman, Stamp, Ornstein & Squires, P.A., located at 2 South Orange Avenue, 5th floor, Orlando, Florida 32801, or on such other date and at such other place as may be agreed upon mutually by the parties.

1.4.    **Closing Obligations.**

(a)    At the Closing, Seller will deliver, or cause to be delivered, to Purchaser:

(i)    a duly executed assignment of the Subject Interest;

(ii)    a resignation of Howard F. Hubler as Managing Member / Manager / President;

(iii)    an Amended and Restated Operating Agreement for the Company, executed by Flawwoods and Seller, replacing in its entirety that certain Operating Agreement of Lighthouse Imports, LLC, a Florida limited liability company, dated June 24, 2007, as amended by that certain First Amendment to Operating Agreement of Lighthouse Imports, LLC dated August 20, 2007 (the "Existing Operating Agreement");

(iv)    a written election on the part of Flawwoods, as the Non-Selling Member of the Company waiving its Right of First Refusal to purchase the Interest as provided in Section 10.04 of the Existing Operating Agreement;

(v)    a written election on the part of the Company, waiving its Right of First Refusal to purchase the Interest as provided in Section 10.04 of the Existing Operating Agreement;

(vi)   a Cash Consideration Escrow Agreement executed by Seller providing for the delivery of the Cash Consideration, as herein defined, to Mark L. Ornstein, Esq. for the benefit of Seller and requiring the immediate payment of the Cash Consideration to an operating account for the Company established by Purchaser for the exclusive use and benefit of the Company;

(vii)   an Amended and Restated Lease Agreement (the "Lease") executed by LHT Real Estate, LLC ("LHT") (a Finkler affiliate) setting forth mutually agreeable terms on a triple net basis, for base rent of Fifty Thousand and No/100 Dollars ($50,000.00) per month, a Management Agreement to LHT providing for management fees of $50,000.00 per month (the "Management Agreement"). The Lease shall grant Purchaser a right of first refusal for said property, the purchase price not to exceed $14,500,000.00, or be less than the outstanding debt on the property; and

(viii)   a release from Seller in favor of the Company remising, releasing, and acquitting and forever discharging the Company of and from all manner of action and actions, cause and causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions, claims, and demands whatsoever, in law or in equity, which the releasing party ever had, now has, or which they thereafter can, shall or may have, against the Company for, upon or by reason of any matter, cause or thing whatsoever, from the beginning of the world to the date of the Closing, except for any indemnification rights pursuant to law or the Company's Operating Agreement, or any matters pursuant to the provisions of this Agreement or any related agreements.

(ix)   such other documents, or instruments as shall be reasonably requested by Purchaser or its counsel to fulfill the requirements of this Agreement.

(b)   At the Closing, Purchaser will deliver, or cause to be delivered, to Seller:

(i)   the original promissory note between Curtis G. Werner, as Payee, and the Company, as Maker in the amount of Three Hundred Thousand and No/100 Dollars ($300,000.00) dated August 19, 2011 (the "Promissory Note"), marked "paid in full;"

(ii)   payment of the Cash Consideration;

(iii)   an Amended and Restated Operating Agreement executed by Purchaser and the Company's new Manager replacing in its entirety the Existing Operating Agreement;

(iv)   a Cash Consideration Escrow Agreement executed by Purchaser providing for the delivery of the Cash Consideration, as herein defined, to Mark L. Ornstein for the benefit of Seller and requiring the immediate payment of the Cash Consideration to an operating account for the Company established by Purchaser for the exclusive use and benefit of the Company;

(v)   The Lease and Management Agreement; and

Page 5 of 16

Interest Purchase Agreement
Lighthouse Imports, LLC

ORLDOCS 12243683 2

(vi)   such other documents or instruments as shall be reasonably requested by Seller or its counsel.

1.5   Intended Membership Interests Under the Amended and Restated Operating Agreement.   The parties hereto acknowledge and agree that an Amended and Restated Operating Agreement for the Company shall be entered into reflecting new Class A Membership Interests as follows:

43%   WERNER TSA, LLC.

55%   Howard F. Hubler.

2%   Flawwoods, LLC

1.6   Conditions Precedent to Closing.   The parties hereto acknowledge and agree that the Closing under this Agreement shall be contingent upon the following conditions being satisfied as of the time of Closing:

(a)   Obtaining manufacturer's approvals by the Company;

(b)   The simultaneous closing of the following related agreements:

(i)   Amended and Restated Operating Agreement

(ii)   Lease Agreement;

(iii)   Management Agreement; and

(iv)   Cash Consideration Escrow Agreement.

(c)   Satisfactory Due Diligence Investigation.   Purchaser and his representatives shall have completed a legal, financial, and business due diligence investigation of the Company during the Inspection Period (as defined below), and Purchaser, in his sole and absolute discretion, shall be satisfied with the results of such due diligence investigation. If Purchaser notifies Seller that the results of such due diligence investigation are satisfactory during the Inspection Period, or fails to so notify Seller that the results of such due diligence are not satisfactory during the Inspection Period, then this Section 1.6(c) shall no longer be a condition precedent to the Purchaser's performance of its obligations under this Agreement;

(d)   Inspection and Review Rights.   Seller acknowledges that prior to Closing Purchaser shall receive, at Sellers' cost, the following due diligence items with respect to the interest:

(i)   A true and correct copy of the Articles of Organization and Operating Agreement of the Company together with any and all amendments thereto;

(ii)   A true and correct copy of the Commercial Lease agreement between the Company (as Lessee) and LRT Real Estate, LLC (as Lessor);

Interest Purchase Agreement:
Lighthouse Imports, LLC

ORLDOCS 12245863 2

(iii)   A true and correct copy of the Landlord's Subordination Agreement in favor of World Omni Financial Corp. and executed by Seller's Landlord, LHT Real Estate, LLC, and all documents reflecting Company obligations to World Omni Financial Corp.;

(iv)   Copies of the Company's balance sheet as of January, 2009 and statements of operations for the twelve-month period then ended, each as applicable to the Company (collectively, the "Financial Statements") through June, 2011.  Seller hereby warrants that the Financial Statements are in accordance with the books and records of Company and present fairly in all material respects the financial position of the Company as of January, 2009 (the "Financial Statement Date").  The Financial Statements have been prepared in accordance with generally accepted accounting principles ("GAAP") applied on a consistent basis.  Except and to the extent reflected or reserved against in the Financial Statements, Company does not have, as of the dates of such Financial Statements, any liabilities or obligations (absolute or contingent) of a nature required by GAAP to be reflected in the Financial Statements.  The reserves, if any, reflected on the Financial Statements were adequate in light of the contingencies with respect to which they were made.  If the Company's Net Worth is lower than as reported on its June 2011 financial statement sent to SET, the difference between the actual Net Worth on June 30, 2011 and the Net Worth reported on the June 2011 financial statement sent to SET will be due and payable by Seller to Company.  In lieu of making an additional capital contribution, Howard F. Hubler may elect to forego receipt of any allocations or distributions due to him pursuant to the Amended and Restated Operating Agreement in the amount owed to the Company.  This money would be recorded on the books and records of the Company as additional paid in capital for Seller's Capital Account.  The Company's Net Worth shall be determined by Ira Silver consistently applying the manufacturer's accounting principles utilized by the Company.  No adjustment to the Net Worth of the Company shall be made for any Tires for Life program or charge backs for any service warranty, finance or similar matters.

(v)   The documents and information described above in this Section are referred to in this Agreement as the "Inspection Documents."  As used herein, "Inspection Period" shall mean that period of time starting on the Effective Date and terminating on the first to occur of (i) the Closing, or (ii) thirty (30) days following the date upon which Purchaser has received copies of the Inspection Documents.  In the event that any of the Inspection Documents are either not delivered to Purchaser pursuant to the terms hereof, or approved by Purchaser prior to the expiration of the Inspection Period, Purchaser may terminate this Agreement prior to the expiration of the Inspection Period; and

(vi)   Such other items pertaining to the Company that are in Seller's possession and/or control and are reasonably requested by Purchaser.

(e)   Additional Capital Due from Howard F. Hubler; Offset against Allocations.  To induce Purchaser to Close hereunder, Seller agrees to make additional capital contributions sufficient to cover the following Company Obligations:

(i)    Trade Payables; Vehicle Payoffs.  Any and all trade payables over sixty (60) days old, or vehicle liens over thirty (30) days old due from the Company in excess of Two Hundred Fifty Thousand and No/100 Dollars ($250,000.00) (the initial amount of known trade payables due when the parties initiated negotiations to sell and purchase the Interest). In lieu of making the additional capital contribution, Howard F. Hubler may elect to forego receipt of any annual distributions due to him pursuant to the Amended and Restated Operating Agreement in an amount of the trade payables over sixty (60) on the day of Closing, minus $250,000.  This money would be recorded on the books and records of the Company as additional paid in capital.

(ii)    Sales Tax Deficiency Obligation.  Any amount due from the Company to satisfy its sales tax obligations to the applicable authorities as revealed by the Company's sales tax audit taking place concurrently with the execution of this Agreement. In lieu of making the additional capital contribution to cover the sales tax deficiency (if any), Howard F. Hubler may elect to forego receipt of any allocations or distributions due to him pursuant to the Amended and Restated Operating Agreement necessary to cover the deficiency. This money would be recorded on the books and records of the Company as additional paid in capital for Seller's Capital Account.

(iii)    Company Loan to Howard F. Hubler.  Any amount borrowed from the Company as of the date of this Agreement, currently believed to be Two Hundred Ten Thousand and No/100 Dollars ($210,000.00).  Howard F. Hubler agrees to repay this amount to the Company at the rate of $15,000.00 per month for fourteen (14) months commencing on the 1st of the 2nd full month following the Closing. In lieu of making the additional capital contribution to cover the loan re-payments, Howard F. Hubler may elect to forego receipt of any allocations or distributions due to him pursuant to the Amended and Restated Operating Agreement. This money would be recorded on the books and records of the Company as additional paid in capital for Seller's Capital Account.

## SECTION TWO

## ESCROW; ESCROW AGENT

2.1    In order to show Purchaser's good faith intent to Close, upon execution of this Agreement and WERNER TSA, LLC's Dealership Management Agreement, Purchaser shall deliver to Escrow Agent One Million Two Hundred Thousand and No/100 Dollars ($1,200,000.00) in the form of immediately available funds.

2.2    By its execution of a counterpart of this Agreement, the Escrow Agent hereby accepts its designation as the escrow agent with respect to the $1,200,000.00, acknowledges receipt of the $1,200,000.00, subject to collection, and agrees to hold, deposit in an interest bearing account, and disburse the same as herein provided based on the mutual written instructions of Seller and Purchaser. The Escrow Agent shall not be liable for any acts taken in good faith, shall only be liable for its willful default or action, or gross negligence, and may, in its sole discretion, rely in good faith upon the written notices, communications, orders or

instructions given by any party hereto; provided, however, that if any notice or correspondence is not executed by both Purchaser and Seller, the Escrow Agent shall give to Purchaser or Seller, as the case may be, copies of any notice or correspondence received from the other and shall not take any actions with regard thereto for five (5) business days following the giving of such notice.

2.3    In the event of a disagreement between the Seller and the Purchaser as to the proper disbursement of the $1,200,000.00, the Escrow Agent reserves the right to deposit said funds into the Registry of the Clerk of Court of St. Johns County, Florida (the "Court Registry"), by filing an interpleader action and Escrow Agent shall thereupon be discharged from the liability hereunder and shall be entitled to reimbursement from Seller and Purchaser for all attorney's fees incurred and court costs expended in connection therewith. The Seller and the Purchaser hereby agree to indemnify and hold harmless the Escrow Agent against any and all losses, claims, damages, liabilities and expenses which may be incurred by the Escrow Agent in connection with its acceptance of this appointment or the performance of its duties hereunder; provided, however, that if the Escrow Agent shall be found guilty of willful default or action, or gross negligence, then, in such event, the Escrow Agent shall bear all such losses, claims, damages and expenses. In the event the Escrow Agent places the $1,200,000.00 in the Court Registry, upon the delivery of same to the prevailing party, whether by court order or otherwise, the non-prevailing party shall: (1) pay to the prevailing party at the time of such delivery, interest on said monies at the publicly announced prime rate of SunTrust Bank, as such rate may change from time to time, said interest to run from the date of deposit into the Court Registry until delivery of same to the prevailing party; and (2) notwithstanding any contrary provision contained herein, pay to the Escrow Agent all monies necessary to reimburse the Escrow Agent for any losses, claims, damages, liabilities and expenses incurred by the Escrow Agent in connection with its appointment as the Escrow Agent or the performance of its duties hereunder.

## SECTION THREE

## REPRESENTATIONS AND WARRANTIES; INDEMNIFICATION.

3.1.    Representations and Warranties of Purchaser.  With the understanding that Seller intends to rely hereon, Purchaser represents and warrants to Seller, as of the date hereof and as of the Closing Date, as follows:

(a)    Purchaser is or will be a limited liability company duly organized, validly existing, and in good standing under the laws of the State of Florida or Georgia, with full corporate power and authority to conduct its business as it is now being conducted and to own or use the properties and assets that it purports to own or use.

(b)    Upon the execution and delivery by Purchaser of this Agreement, this Agreement will constitute the legal, valid and binding obligation of Purchaser, enforceable against Purchaser in accordance with its terms, except as may be limited by bankruptcy, insolvency, moratorium or other laws affecting the rights of creditors generally, or by general equity principles or public policy. Purchaser has the full right, power and authority to execute and deliver this Agreement and to perform his obligations hereunder.

Page 7 of 16

(c)     Neither the execution nor delivery of this Agreement nor the consummation or performance of any of the transactions contemplated herein will contravene, conflict with, or result in a violation of any provision of any agreement binding on Purchaser's organizational documents.

(d)     Purchaser agrees to waive any conflict of interest objection to Ira Silver and Morrison Brown Argiz & Farra's providing accounting services to both Purchaser and Seller with respect to the sale and purchase of the Interest.

(e)     Purchaser is not relying on any representations by Seller except for those specifically set forth in this Agreement.

(f)     Neither the Purchaser nor the Company, nor any of their respective affiliates, have dealt with any person who is entitled to a broker's commission, finder's fee, investment banker's fee or similar payment from Seller, the Company or Purchaser for arranging the transactions contemplated hereby or introducing the parties to each other.

3.2.    Representations and Warranties of Seller. With the understanding that Purchaser intends to rely hereon, Seller represents and warrants to Purchaser as of the date hereof and as of the Closing Date, as follows:

(a)     Upon the execution and delivery by Seller of this Agreement, this Agreement will constitute the legal, valid and binding obligation of Seller, enforceable against Seller in accordance with its terms, except as may be limited by bankruptcy, insolvency, moratorium or other laws affecting the rights of creditors generally, or by general equity principles or public policy. Seller has the full right, power and authority to execute and deliver this Agreement and to perform its obligations hereunder.

(b)     Neither the execution nor delivery of this Agreement nor the consummation or performance of any of the transactions contemplated herein by Seller will contravene, conflict with or result in a violation of any provision of any agreement binding on Seller or the Company. Other than Seller's agreements with Southeast Toyota, Toyota Motor Sales, World Omni Financial Corp. and the Operating Agreement of the Company, neither Seller nor the Company is a party to, or bound by, any unexpired, undischarged or unsatisfied written or oral Contract, agreement, indenture, mortgage, debenture, note or other instruments under the terms of which the execution, delivery and performance by Seller or the Company of this Agreement and the consummation of the transactions contemplated hereby by Seller or the Company will require a consent, approval, or notice or result in a lien on the Interest.

(c)     Seller is not relying on any representations by Purchaser except for those specifically set forth in this Agreement.

(d)     All taxes required to have been paid by Seller and the Company have been properly paid. There is no present or threatened dispute as to taxes payable by Seller that could result in any adverse effect on Purchaser, the Seller or its business.

(e)    Seller is, and will be on the Closing Date, the record and beneficial owner and holder of the Interest, free and clear of all liens, charges and encumbrances whatsoever.

(f)    Neither the Seller nor the Company, nor any of their respective affiliates, have dealt with any person who is entitled to a broker's commission, finder's fee, investment banker's fee, or similar payment from Purchaser, the Company or Seller for arranging the transactions contemplated hereby or introducing the parties to each other.

(g)    Other than as set forth in the Company's Operating Agreement, there are no outstanding subscriptions, options, warrants, rights (including preemptive rights), calls, convertible securities, contractual obligations to repurchase, redeem or otherwise acquire any membership interest of the Company, voting trusts, members' agreements or other agreements or commitments of any character relating to the issued or unissued membership interest or other securities of the Company or obligating the Company to issue any securities of any kind to any Person.

(h)    The Company has good title to its assets, free and clear of any Claims except for the liens associated with the liabilities of the Company. Except as disclosed in the Financial Statements:

(i)    No inventory is consigned, held in bailment or trust or otherwise held on deposit for others.

(j)    Other than as disclosed to Purchaser, the Company; (A) has no Liabilities except for Liabilities provided for or reserved against in the Financial Statements; and (B) has no liabilities that relate to or has arisen out of a breach of contract, breach of warranty, tort, or infringement by or against the Company or any claim or lawsuit involving the Company.

(k)    Other than agreements with LHT Real Estate, LLC, the Company has not entered into any Contracts, arrangements or other business relationships with Seller or any of his affiliates. Other than as reflected on the Financial Statements, the Company is not owed nor owes any amount from or to Seller or any of his affiliates. Except for the Lease, no property or interest in any property which relates to and is or will be necessary or useful in the present or currently contemplated future operation of the business of the Company is presently owned by or leased by or to Seller. Neither the Company nor Seller has an interest, directly or indirectly, in any business, corporate or otherwise, which is in competition with the business of the Company.

(l)    Except with respect to World Omni, there is no litigation or proceeding, at law or in equity, and there are no proceedings or governmental investigations before any Governmental or Regulatory Authority, pending or threatened against Seller, the Company, nor the officers, manager or affiliates of Seller or of the Company, nor is there any basis for any of the foregoing. Further, the Company is not a party to, or bound by, any decree, order or arbitration award (or agreement entered into in any administrative, judicial or arbitration proceeding with any Governmental or Regulatory Authority).

(m)    The Company is not in violation of, or delinquent in respect to, any decree, order or arbitration award or agreement with, or any Permit from, any Governmental or Regulatory Authority to which the property, assets, personnel or business activities of the Company are subject.  The Company has not received from any Governmental or Regulatory Authority any written notification with respect to possible noncompliance of any decree, order, writ, judgment or arbitration award or any Law.

(n)    With respect to the Benefit Plans of the Company, if any, all reports and information relating to each Benefit Plan required to be filed with any Governmental or Regulatory Authority have been timely filed and are accurate in all material respects.  All reports and information relating to each Benefit Plan, if any, required to be disclosed or provided to participants or their beneficiaries have been timely disclosed or provided.  No fiduciary of any Benefit Plan has committed a breach of any responsibility or obligation imposed upon fiduciaries under ERISA with respect to such Benefit Plan.

(o)    With Respect to the employees of the Company:

(i)    Neither Seller nor the Company has committed any wrongful act in dealing with any employee.

(ii)    Neither Seller nor the Company has received any notification, written or otherwise, of any improper, immoral, or illegal acts conducted at the Company.

(iii)    No employee of the Company has any claim against the Company (whether under Law, any employment Contract or otherwise) on account of or for: (i) overtime pay, other than overtime pay for the current payroll period, (ii) wages or salaries, other than wages or salaries for the current payroll period, or (iii) vacations, sick leave, time off or pay in lieu of vacation, sick leave or time off, other than vacation, sick leave or time off (or pay in lieu thereof) earned in the 12 month period immediately prior to the date of this Agreement.

(iv)    No employee of the Company is an undocumented alien or has been hired in violation of the Immigration Laws.

(p)    Seller warrants and represents that the operation and use of the real property leased by the Company (the "Leased Premises") does not involve the generation, treatment, storage, disposal or release of a hazardous substance or solid waste into the environment in violation of Environmental Laws, as defined herein, and that the Leased Premises are being operated by the Company in accordance with all applicable Environmental Laws, zoning ordinances and building codes.  Further, Seller warrants and represents that the Company is in compliance with all applicable Environmental Laws and environmental permits, and there are no Environmental Claims, as defined herein, pending or threatened against the Company.  For the purposes of this subsection, "Environmental Laws" means all federal, state or local statutes, laws, rules, ordinances, codes, rule of common law, regulations, judgments and orders in effect on the Closing Date and relating to protection of human health or the environment (including ambient air, surface water, ground water, drinking water, wildlife, plants, land surface or subsurface strata), including laws and regulations relating to Releases or

threatened Releases of Hazardous Substances, as defined herein, or otherwise relating to the manufacture, processing, distribution, use, treatment, storage, disposal, transport or handling of Hazardous Substances. "Environmental Claim" means any and all administrative, regulatory or judicial actions, suits, demands, demand letters, directives, claims, liens, investigations, proceedings or notices of noncompliance or violation (written or oral) by any Person alleging potential liability (including potential liability for enforcement, investigation costs, cleanup costs, governmental response costs, removal costs, remedial costs, natural resources damages, property damages, personal injuries or penalties) arising out of, based on or resulting from: (1) the presence or release into the environment of any Hazardous Substance at any location, whether or not owned by the Company; (2) circumstances forming the basis of any violation or alleged violation of any Environmental Law; or (3) any and all claims by any person seeking damages, contribution, indemnification, cost recovery, compensation or injunctive relief resulting from the presence or release of any Hazardous Substances. "Hazardous Substances" means: (1) any petroleum or petroleum products, radioactive materials, asbestos in any form, mold, mildew, urea formaldehyde foam insulation, transformers or other equipment that contain dielectric fluid containing regulated levels of polychlorinated biphenyls (PCBs) and radon gas; and (2) any chemicals, materials or substances which are now or ever have been defined as or included in the definition of "medical wastes," "hazardous substances," "hazardous wastes," "hazardous materials," "extremely hazardous wastes," "restricted hazardous wastes," "toxic substances," "toxic pollutants," or other words of similar import; in all cases as set forth in any Environmental Law. Seller and Purchaser acknowledge that the Leased Premises is used and is intended to continue to be used as a motor vehicle sales and service facility and that such substances used, stored and disposed of by the Dealership in its normal course of business in compliance with the Environmental laws shall not be deemed Hazardous Substances.

        (q)    The representations and warranties of the Member and the Seller in this Agreement, and all representations, warranties and statements of the Member and the Seller contained in any schedule, Financial Statement, exhibit, list, certificate or other document delivered pursuant hereto or in connection herewith, are true and correct to the best of Seller's knowledge, and do not omit to state a material fact necessary in order to make the representations, warranties or statements contained herein or therein not misleading.

        (r)    Seller agrees to waive any conflict of interest objection to Ira Silver and Morrison Brown Argiz & Farra's providing accounting services to both Purchaser and Seller with respect to the sale and purchase of the Interest.

    3.3.    Survival of Representations and Warranties.    The representations and warranties contained in this Agreement, or in any exhibit, document, certificate or instrument delivered in connection herewith, shall survive the Closing for a period of 18 months.

    3.4.    Indemnification.    At all times after the date of this Agreement, each party to this Agreement shall indemnify and hold harmless the other party against and in respect of any and all damages, claims, losses, liabilities and reasonable expenses (including, without limitation, legal, accounting and other expenses) suffered by such other party which may arise out of or in respect of: (a) any violation or breach of this Agreement by the indemnifying party; or (b) any falsity, inaccuracy or misrepresentation in or breach of any of the representations, warranties or

covenants made in this Agreement by the indemnifying party.

## SECTION FOUR

### MISCELLANEOUS PROVISIONS.

4.1.    Counterparts.  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument.  Confirmation of execution by electronic transmission of a facsimile signature page shall be binding upon any party so confirming.

4.2.    Further Assurances.  The parties hereby agree from time to time to execute and deliver such further and other transfers, assignments and documents and do all matters and things, which may be convenient or necessary to more effectively and completely carry out the intentions of this Agreement.

4.3.    Notices.  All notices, requests, consents and other communications required or permitted under this Agreement shall be in writing (including electronic transmission) and shall be hand delivered by messenger or courier service, transmitted by facsimile, or mailed by registered or certified mail (postage prepaid), return receipt requested, addressed to:

If to Purchaser:

WERNER TSA, LLC
200 Mansell Court East, Suite 510
Roswell, Georgia 30076
E-Mail: cwerner@wernerholdings.com

With a copy to:

Mark L. Ornstein
Killgore, Pearlman, Stamp, Ornstein &
Squires, P.A.
2 South Orange Avenue, 5th Floor
Orlando, Florida 32801
Facsimile: 407-839-3635
Email: mlornstein@kpsos.com

If to Seller:

Howard F. Hubler
2995 U.S. Highway 1 S.
St. Augustine, Florida 32086
Facsimile:
E-Mail: hhubler@lhtoyota.com

With a copy to:

J. Gregory Humphries
Shutts & Bowen, LLP
300 South Orange Avenue, Suite 1000
Orlando, Florida 32801
Facsimile: 407-425-8316
Email: jhumphries@shutts-law.com

or to such other address as any party may designate by notice complying with the terms of this Section.  Each such notice shall be deemed delivered (a) on the date delivered if by personal delivery; (b) on the date of transmission with confirmed answer back if by facsimile transmission; and (c) on the date upon which the return receipt is signed or delivery is refused or the notice is designated by the postal authorities or overnight courier service as not deliverable, as the case may be.

4.4.   Binding Effect.  All of the terms and provisions of this Agreement shall be binding upon, inure to the benefit of, and be enforceable by the parties and their respective legal representatives, successors and permitted assigns, whether so expressed or not.

4.5.   Headings.  The headings contained in this Agreement are for convenience of reference only and shall not limit or otherwise affect in any way the meaning or interpretation of this Agreement.

4.6.   Severability.  If any provision of this Agreement or any other agreement entered into pursuant to this Agreement is contrary to, prohibited by or deemed invalid under applicable law or regulation, such provision shall be inapplicable and deemed omitted to the extent so contrary, prohibited or invalid, but the remainder of this Agreement shall not be invalidated thereby and shall be given full force and effect so far as possible.  If any provision of this Agreement may be construed in two or more ways, one of which would render the provision invalid or otherwise voidable or unenforceable and another of which would render the provision valid and enforceable, such provision shall have the meaning which renders it valid and enforceable.

4.7.   Waivers.  The failure or delay of any party at any time to require performance by another party of any provision of this Agreement, even if known, shall not affect the right of such party to require performance of that provision or to exercise any right, power or remedy under this Agreement.  Any waiver by any party of any breach of any provision of this Agreement should not be construed as a waiver of any continuing or succeeding breach of such provision, a waiver of the provision itself, or a waiver of any right, power or remedy under this Agreement.  No notice to or demand on any party in any circumstances shall, of itself, entitle such party to any other or further notice or demand in similar or other circumstances.

4.8.   Governing Law. This Agreement and all transactions contemplated by this Agreement shall be governed by, and construed and enforced in accordance with, the internal laws of the State of Florida, without regard to principles of conflicts of laws.

4.9.   Jurisdiction and Venue. The parties acknowledge that a substantial portion of the negotiations, anticipated performance and execution of this Agreement occurred or shall occur in St. Johns County, Florida.  Any civil action or legal proceeding arising out of or relating to this Agreement shall be brought in the courts of record of the State of Florida in St. Johns County.  Each party consents to the jurisdiction of such court in any such civil action or legal proceeding and waives any objection to the laying of venue of any such civil action or legal proceeding in such court.  Service of any court paper may be affected on such party by mail, as provided in this Agreement, or in such other manner as may be provided under applicable laws, rules of procedure or local rules.

4.10.   Amendments.   The provisions of this Agreement may not be amended, supplemented, waived or changed orally, but only by writing signed by Purchaser and Seller.

4.11.   Jury Waiver.   IN ANY CIVIL ACTION, COUNTERCLAIM, OR PROCEEDING, WHETHER AT LAW OR IN EQUITY, WHICH ARISES OUT OF,

CONCERNS, OR RELATES TO THIS AGREEMENT, ANY AND ALL TRANSACTIONS CONTEMPLATED HEREUNDER, THE PERFORMANCE OF THIS AGREEMENT, OR THE RELATIONSHIP CREATED HEREBY, WHETHER SOUNDING IN CONTRACT, TORT, STRICT LIABILITY, OR OTHERWISE, TRIAL SHALL BE TO A COURT OF COMPETENT JURISDICTION AND NOT TO A JURY.   EACH PARTY HEREBY IRREVOCABLY WAIVES ANY RIGHT HE MAY HAVE TO A TRIAL BY JURY. ANY PARTY MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS AGREEMENT WITH ANY COURT, AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO OF THE WAIVER OF THEIR RIGHT TO TRIAL BY JURY.  NEITHER PARTY HAS MADE OR RELIED UPON ANY ORAL REPRESENTATIONS TO OR BY ANY OTHER PARTY REGARDING THE ENFORCEABILITY OF THIS PROVISION.  EACH PARTY HAS READ AND UNDERSTANDS THE EFFECT OF THIS JURY WAIVER PROVISION.

4.12.   Advice of Counsel.   EACH PARTY ACKNOWLEDGES THAT HE/SHE HAS BEEN ADVISED BY HIS/HER OWN COUNSEL WITH RESPECT TO THIS AGREEMENT, AND SPECIFICALLY WITH RESPECT TO THE TERMS OF SECTION 4.11, WHICH CONCERNS THE WAIVER OF EACH PARTY'S RIGHT TO TRIAL BY JURY.

4.13.   Assignments.   Seller may not assign his rights or delegate his duties or obligations under this Agreement.

4.14.   No Construction Against Draftsman.   The parties acknowledge that this is a negotiated agreement, and that in no event shall the terms of this Agreement be construed against either party on the basis that such party, or his counsel, drafted this Agreement.

4.15.   Entire Agreement.   This Agreement, together with that certain Dealership Management Agreement between the Company and Purchaser, or Purchaser's assignee, that certain Amended and Restated Real Estate Management Agreement between LHT Real Estate, LLC and Seller's affiliate, that certain Amended and Restated Operating Agreement, that certain Amended and Restated Lease Agreement, and that certain Promissory Note between Curtis G. Werner to the Company, all of even date herewith  (including all of the attached exhibits) (collectively, the "Ancillary Documents") represent the entire understanding and agreement between the parties with respect to the subject matter of this Agreement, and the Ancillary Documents, and supersede all other negotiations, understandings and representations (if any) made by and between such parties.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the day and year first above written.

SELLER:

LIGHTHOUSE IMPORTS, LLC, a
Florida limited liability company

By: _____
Howard F. Hubler, Managing Member

PURCHASER:

WERNER TSA, LLC, a Florida
limited liability company

X By: _____
Curtis G. Werner, Manager

ESCROW JOINDER

The undersigned hereby joins in this Agreement to act as Escrow Agent as provided for herein.

ESCROW AGENT:
KILLGORE PEARLMAN STAMP
ORNSTEIN & SQUIRES, P.A., P.A.

for By: _____
Print Name: Mark L. Ornstein
Title: Partner

## NON-SELLING MEMBER JOINDER

The undersigned hereby joins in this Agreement for the sole purpose of evidencing its waiver of any right of first refusal to purchase the Interest as set forth herein pursuant to Section 10.4 of the Existing Operating Agreement.

Flawwoods, LLC, a Florida limited liability company

Larry Woods, Managing Member

## FIRST AMENDMENT TO INTEREST PURCHASE AGREEMENT

THIS FIRST AMENDMENT TO INTEREST PURCHASE AGREEMENT (this "Amendment") is made and entered into with an effective date of September 28, 2011 ("Effective Date") by and between HOWARD F. HUBLER ("Seller"), WERNER TSA, LLC, a Florida limited liability company ("Purchaser"), and LIGHTHOUSE IMPORTS, LLC, a Florida limited liability (the "Company"). Seller, Purchaser and the Company are sometimes referred to herein as the "Parties").

### RECITALS:

A.      The Parties entered into that certain Interest Purchase Agreement dated August 24, 2011 (the "Agreement"). Capitalized terms used but not defined herein shall be as defined in the Agreement.

B.      The Parties entered into negotiations with World Omni Financial Corp. ("Lender") to obtain forbearance from, and modification of, the Company's existing loan terms;

C.      The Parties received a preliminary loan term sheet setting forth revised loan terms that are mutually acceptable; and

D.      Purchaser and Seller desire to amend the Agreement to reflect that Closing under the Agreement shall be contingent on Lender providing loan modification documents consistent with the term sheet, as more fully set forth herein.

NOW, THEREFORE, for and in consideration of the foregoing promises (which are hereby incorporated into this Agreement) and the representations, warranties and agreements contained herein and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereby agree as follows:

1.      Recitals. The Parties agree that the above recitals are true and correct and are incorporated herein by this reference.

2.      Modification to Section 1.6 "Conditions Precedent to Closing." Section 1.6 shall be amended as follows:

A.      The Inspection Period has expired; accordingly, sub-paragraphs 1.6(c) and (d) are hereby deemed satisfied and a new sub-paragraph (f) shall be added thereto entitled "Loan Modification" which states: "The Parties agree that the proposed loan modification terms set forth in that certain World Omni Financial Corp. St. Augustine Toyota Indicative Proposal dated September 23, 2011, a copy of which is attached hereto as Exhibit "A" (the "Term Sheet"), are mutually acceptable, but that Lender's delivery of loan modification documents consistent with the Term Sheet prior to Closing shall be a condition precedent for Purchaser's obligation to Close.

B.      The following shall be added to the end of Section 1.6(e)(iii):

"Such amount shall be reduced by the amount of the $108,000.00 capital injection made by Howard F. Hubler, if verified by Ira Silver, and by the amount by which the payments to LHT are reduced as a result of the Forbearance Agreement with World Omni Financial Corp.

The parties also agree to recalculate the amount of management fees due LHT under the Management Agreement as a result of the reduction in the amounts due LHT as required by the World Omni Financial Corp. Forebearance Agreement so that the parties obtain the same economic result as originally intended."

3.    Miscellaneous.  Except as modified by this Amendment, the Agreement remains in full force and effect.  This Amendment may be executed in multiple counterparts, each of which shall be an original and all of which, when taken together, shall be one and the same instrument.  To facilitate execution of this Amendment, the parties may execute and exchange counterparts of the signature pages by facsimile transmission or by electronic mail in "portable document format" form.

The parties have executed this First Amendment to Interest Purchase Agreement the day and year first above written.

SELLER:

By: _____
    Howard F. Hubler

PURCHASER:

WERNER TSA, LLC, a Florida
limited liability company

By: _____
    Curtis G. Werner, Manager

COMPANY:

LIGHTHOUSE IMPORTS, LLC, a
Florida limited liability company

By: _____
    Howard F. Hubler, Managing Member

12287620v2

### SECOND AMENDMENT TO INTEREST PURCHASE AGREEMENT

THIS SECOND AMENDMENT TO INTEREST PURCHASE AGREEMENT (this "Amendment") is made and entered into with an effective date of November 30, 2011 ("Effective Date") by and between HOWARD F. HUBLER ("Seller"), WERNER TSA, LLC, a Florida limited liability company ("Purchaser"), and LIGHTHOUSE IMPORTS, LLC, a Florida limited liability (the "Company"). Seller, Purchaser and the Company are sometimes referred to herein as the "Parties").

### RECITALS:

A.      The Parties entered into that certain Interest Purchase Agreement dated August 24, 2011, as amended by that certain First Amendment to Interest Purchase Agreement dated September 28, 2011 (the "Agreement"). Capitalized terms used but not defined herein shall be as defined in the Agreement;

B.      Section 1.3 of the Agreement provides that Closing shall in no event be later than November 30, 2011; and

C.      Purchaser and Seller desire to amend the Agreement to reflect that the outside Closing Date under the Agreement shall be extended to January 31, 2012, as more fully set forth herein.

NOW, THEREFORE, for and in consideration of the foregoing promises (which are hereby incorporated into this Agreement) and the representations, warranties and agreements contained herein and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereby agree as follows:

1.      Recitals.  The Parties agree that the above recitals are true and correct and are incorporated herein by this reference.

2.      Modification to Section 1.3 "Closing." The first sentence of Section 1.3 shall be deleted and replaced with the following:

"The purchase and sale of the Interest provided for in this Agreement (the "Closing") shall take place five (5) business days following receipt of the final Manufacturers' approval needed for the transaction, but in no event later than January 31, 2012 (the "Closing Date")."

3.      Miscellaneous. Except as modified by this Amendment, the Agreement remains in full force and effect.  This Amendment may be executed in multiple counterparts, each of which shall be an original and all of which, when taken together, shall be one and the same instrument.  To facilitate execution of this Amendment, the parties may execute and exchange counterparts of the signature pages by facsimile transmission or by electronic mail in "portable document format" form.

The parties have executed this Second Amendment to Interest Purchase Agreement the day and year first above written.

SELLER:

By: _____
Howard F. Hubler

PURCHASER:

WERNER TSA, LLC, a Florida
limited liability company

By: _____
Curtis G. Werner, Manager

COMPANY:

LIGHTHOUSE IMPORTS, LLC, a
Florida limited liability company

By: _____
Howard F. Hubler, Managing Member

—Second Amendment to Interest Purchase Agreement—
Lighthouse Imports, LLC

Page 2 of 2

## THIRD AMENDMENT TO INTEREST PURCHASE AGREEMENT

THIS THIRD AMENDMENT TO INTEREST PURCHASE AGREEMENT (this "Amendment") is made and entered into with an effective date of December 15, 2011 ("Effective Date") by and between HOWARD F. HUBLER ("Seller"), WERNER TSA, LLC, a Florida limited liability company ("Purchaser"), and LIGHTHOUSE IMPORTS, LLC, a Florida limited liability (the "Company"). Seller, Purchaser and the Company are sometimes referred to herein as the "Parties").

### RECITALS:

A.      The Parties entered into that certain Interest Purchase Agreement dated August 24, 2011, as amended by that certain First Amendment to Interest Purchase Agreement dated September 28, 2011, and as amended by that certain Second Amendment to Interest Purchase Agreement dated November 30, 2011 (the "Agreement"). Capitalized terms used but not defined herein shall be as defined in the Agreement;

B.      Purchaser and Seller desire to amend the Agreement to reflect the attachment as an exhibit to the Agreement the fully negotiated Amended and Restated Operating Agreement that the parties shall execute at Closing, as more fully set forth herein.

NOW, THEREFORE, for and in consideration of the foregoing promises (which are hereby incorporated into this Agreement) and the representations, warranties and agreements contained herein and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereby agree as follows:

1.      **Recitals.** The Parties agree that the above recitals are true and correct and are incorporated herein by this reference.

2.      **Amended and Restated Operating Agreement.** Purchaser and Seller acknowledge having negotiated a new Amended and Restated Operating Agreement (the "AROA") as of the original Effective Date of the Agreement, August 24, 2011. Purchaser and Seller acknowledge that changes were made to the AROA. Said changes are reflected in the AROA attached as Exhibit "A," and the parties hereto agree to execute same at Closing without further modification.

3.      **Miscellaneous.** Except as modified by this Amendment, the Agreement remains in full force and effect. This Amendment may be executed in multiple counterparts, each of which shall be an original and all of which, when taken together, shall be one and the same instrument. To facilitate execution of this Amendment, the parties may execute and exchange counterparts of the signature pages by facsimile transmission or by electronic mail in "portable document format" form.

The parties have executed this Third Amendment to Interest Purchase Agreement the day and year first above written.

Third Amendment to Interest Purchase Agreement
Lighthouse Imports, LLC

SELLER:

_____
Howard F. Hubler

PURCHASER:

WERNER TSA, LLC, a Florida
limited liability company

By:_____
    Curtis G. Werner, Manager

COMPANY:

LIGHTHOUSE IMPORTS, LLC, a
Florida limited liability company

By:_____
    Howard F. Hubler, Member
    and Manager

By: Flawwoods, LLC, a Florida limited
    liability company, Member

_____
F. Lawrence Woods, Manager

SELLER:

Howard F. Hubler

PURCHASER:

WERNER TSA, LLC, a Florida
limited liability company

By: _____
Curtis G. Werner, Manager

COMPANY:

LIGHTHOUSE IMPORTS, LLC, a
Florida limited liability company

By: _____
Howard F. Hubler, Member
and Manager

By: Flawwoods, LLC, a Florida limited
liability company, Member

_____
F. Lawrence Woods, Manager

Third Amendment to Interest Purchase Agreement
Lighthouse Imports, LLC

Page 2 of 2

## FOURTH AMENDMENT TO INTEREST PURCHASE AGREEMENT

THIS FOURTH AMENDMENT TO INTEREST PURCHASE AGREEMENT (this "Amendment") is made and entered into with an effective date of January 19, 2011 ("Effective Date") by and between HOWARD F. HUBLER ("Seller"), WERNER TSA, LLC, a Florida limited liability company ("Purchaser"), and LIGHTHOUSE IMPORTS, LLC, a Florida limited liability (the "Company"). Seller, Purchaser and the Company are sometimes referred to herein as the "Parties").

## RECITALS:

A.    The Parties entered into that certain Interest Purchase Agreement dated August 24, 2011, as amended by that certain First Amendment to Interest Purchase Agreement dated September 28, 2011, and as amended by that certain Second Amendment to Interest Purchase Agreement dated November 30, 2011 and as amended by that certain Third Amendment to Interest Purchase Agreement dated December 15, 2011 (the "Agreement"). Capitalized terms used but not defined herein shall be as defined in the Agreement;

B.    Section 1.3 of the Agreement was amended by that certain hereinabove referenced Second Amendment to Interest Purchase Agreement to provide that Closing shall in no event be later than January 31, 2012; and

C.    Purchaser and Seller desire to amend the Agreement to reflect that the outside Closing Date under the Agreement shall be extended to April 15, 2012, as more fully set forth herein.

NOW, THEREFORE, for and in consideration of the foregoing promises (which are hereby incorporated into this Agreement) and the representations, warranties and agreements contained herein and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereby agree as follows:

1.    Recitals.  The Parties agree that the above recitals are true and correct and are incorporated herein by this reference.

2.    Modification to Section 1.3 "Closing." The first sentence of Section 1.3 shall be deleted and replaced with the following:

"The purchase and sale of the Interest provided for in this Agreement (the "Closing") shall take place five (5) business days following receipt of the final Manufacturers' approval needed for the transaction, but in no event later than April 15, 2012 (the "Closing Date").

3.    Miscellaneous.  Except as modified by this Amendment, the Agreement remains in full force and effect. This Amendment may be executed in multiple counterparts, each of which shall be an original and all of which, when taken together, shall be one and the same instrument. To facilitate execution of this Amendment, the parties may execute and exchange counterparts of the signature pages by facsimile transmission or by electronic mail in "portable document format" form.

The parties have executed this Fourth Amendment to Interest Purchase Agreement the day and year first above written.

SELLER:

Howard F. Hubler

PURCHASER:

WERNER TSA, LLC, a Florida limited liability company

By: _____
Curtis G. Werner, Manager

COMPANY:

LIGHTHOUSE IMPORTS, LLC, a Florida limited liability company

By: _____
Howard E. Hubler, Member and Manager

By: Flawwoods, LLC, a Florida limited liability company, Member

_____
F. Lawrence Woods, Manager

## FIFTH AMENDMENT TO INTEREST PURCHASE AGREEMENT

THIS FIFTH AMENDMENT TO INTEREST PURCHASE AGREEMENT (this "Amendment") is made and entered into with an effective date of April 19, 2011 ("Effective Date") by and between HOWARD F. HUBLER ("Seller"), WERNER TSA, LLC, a Florida limited liability company ("Purchaser"), and LIGHTHOUSE IMPORTS, LLC, a Florida limited liability (the "Company"). Seller, Purchaser and the Company are sometimes referred to herein as the "Parties").

### RECITALS:

A.    The Parties entered into that certain Interest Purchase Agreement dated August 24, 2011, as amended by that certain First Amendment to Interest Purchase Agreement dated September 28, 2011, and as amended by that certain Second Amendment to Interest Purchase Agreement dated November 30, 2011 and as amended by that certain Third Amendment to Interest Purchase Agreement dated December 15, 2011 and as amended by that certain Fourth Amendment to Interest Purchase Agreement dated January 19, 2012 (the "Agreement"). Capitalized terms used but not defined herein shall be as defined in the Agreement;

B.    Section 1.3 of the Agreement was amended by that certain hereinabove referenced Second Amendment to Interest Purchase Agreement to provide that Closing shall in no event be later than January 31, 2012; and

C.    Purchaser and Seller desire to amend the Agreement to reflect that the outside Closing Date under the Agreement shall be extended to June 15, 2012, as more fully set forth herein.

NOW, THEREFORE, for and in consideration of the foregoing promises (which are hereby incorporated into this Agreement) and the representations, warranties and agreements contained herein and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereby agree as follows:

1.    Recitals. The Parties agree that the above recitals are true and correct and are incorporated herein by this reference.

2.    Modification to Section 1.3 "Closing." The first sentence of Section 1.3 shall be deleted and replaced with the following:

"The purchase and sale of the Interest provided for in this Agreement (the "Closing") shall take place five (5) business days following receipt of the final Manufacturers' approval needed for the transaction, but in no event later than June 15, 2012 (the "Closing Date")."

3.    Miscellaneous. Except as modified by this Amendment, the Agreement remains in full force and effect. This Amendment may be executed in multiple counterparts, each of which shall be an original and all of which, when taken together, shall be one and the same instrument. To facilitate execution of this Amendment, the parties may execute and exchange counterparts of the signature pages by facsimile transmission or by electronic mail in "portable document format" form.

The parties have executed this Fifth Amendment to Interest Purchase Agreement the day and year first above written.

SELLER:

Howard F. Hubler

PURCHASER:

WERNER TSA, LLC, a Florida limited liability company

By: Curtis G. Werner, Manager

COMPANY:

LIGHTHOUSE IMPORTS, LLC, a Florida limited liability company

By: Howard F. Hubler, Member and Manager

By: Flawwoods, LLC, a Florida limited liability company, Member

F. Lawrence Woods, Manager

Fifth Amendment to Interest Purchase Agreement
Lighthouse Imports, LLC

Page 2 of 2

## SIXTH AMENDMENT TO INTEREST PURCHASE AGREEMENT

THIS SIXTH AMENDMENT TO INTEREST PURCHASE AGREEMENT (this "Amendment") is made and entered into with an effective date of June 19, 2012 ("Effective Date") by and between HOWARD F. HUBLER ("Seller"), WERNER TSA, LLC, a Florida limited liability company ("Purchaser"), and LIGHTHOUSE IMPORTS, LLC, a Florida limited liability (the "Company"). Seller, Purchaser and the Company are sometimes referred to herein as the "Parties").

## RECITALS:

A.      The Parties entered into that certain Interest Purchase Agreement dated August 24, 2011, as amended by that certain First Amendment to Interest Purchase Agreement dated September 28, 2011, as amended by that certain Second Amendment to Interest Purchase Agreement dated November 30, 2011, that certain Third Amendment dated December 15, 2011, that certain Fourth Amendment dated January 19, 2012, and that certain Fifth Amendment dated April 19, 2012 (the "Agreement"). The Agreement, including all Amendments thereto are hereby acknowledged and ratified by the parties signing hereto. Capitalized terms used but not defined herein shall be as defined in the Agreement;

B.      Section 1.3 of the Agreement was amended by that certain hereinabove referenced Second Amendment to Interest Purchase Agreement to provide that Closing shall in no event be later than January 31, 2012, and was subsequently extended to be no later than June 15, 2012 by that certain hereinabove referenced Fifth Amendment dated April 19, 2012; and

C.      Purchaser and Seller desire to amend the Agreement to reflect that the outside Closing Date under the Agreement shall be extended to August 1, 2012, as more fully set forth herein.

NOW, THEREFORE, for and in consideration of the foregoing promises (which are hereby incorporated into this Agreement) and the representations, warranties and agreements contained herein and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereby agree as follows:

1.      Recitals.  The Parties agree that the above recitals are true and correct and are incorporated herein by this reference.

2.      Modification to Section 1.3 "Closing." The first sentence of Section 1.3 shall be deleted and replaced with the following:

"The purchase and sale of the Interest provided for in this Agreement (the "Closing") shall take place five (5) business days following receipt of the final Manufacturers' approval needed for the transaction, but in no event later than August 1, 2012 (the "Closing Date")."

3.      Miscellaneous.  Except as modified by this Amendment, the Agreement remains in full force and effect. This Amendment may be executed in multiple counterparts, each of which shall be an original and all of which, when taken together, shall be one and the same instrument.  To facilitate execution of this Amendment, the parties may execute and exchange

counterparts of the signature pages by facsimile transmission or by electronic mail in "portable document format" form.

The parties have executed this Sixth Amendment to Interest Purchase Agreement the day and year first above written.

SELLER:

Howard F. Hubler

PURCHASER:

WERNER TSA, LLC, a Florida limited liability company

By:_____
    Curtis G. Werner, Manager

COMPANY:

LIGHTHOUSE IMPORTS, LLC, a Florida limited liability company

By_____
    Howard F. Hubler, Member
    and Manager

By: Flawwoods, LLC, a Florida limited
    liability company, Member

F. Lawrence Woods, Manager

counterparts of the signature pages by facsimile transmission or by electronic mail in "portable document format" form.

The parties have executed this Sixth Amendment to Interest Purchase Agreement the day and year first above written.

SELLER:

_____
Howard F. Hubler

PURCHASER:

WERNER TSA, LLC, a Florida
limited liability company

By: _____
Curtis G. Werner, Manager

COMPANY:

LIGHTHOUSE IMPORTS, LLC, a
Florida limited liability company

By: _____
Howard F. Hubler, Member
and Manager

By: Flawwoods, LLC, a Florida limited
liability company, Member

_____
F. Lawrence Woods, Manager

## LIGHTHOUSE IMPORTS, LLC'S MANAGEMENT AGREEMENT

THIS MANAGEMENT AGREEMENT (this "Agreement") is made and entered on the 24 day of August, 2011 (the "Effective Date"), by and between Werner TSA, LLC, a Florida limited liability company and/or its assigns ("Agent"), and Lighthouse Imports, LLC, a Florida limited liability company ("Principal").

### RECITALS

WHEREAS, Principal is the owner and operator of a Toyota dealership (the "Dealership") and leases the real property with an address of 2995 US Highway 1 South, St. Augustine, FL 32086 (the "Real Property"); and

WHEREAS, Principal desires to retain Agent, and Agent desires to be retained by Principal, to manage Principal's Dealership, which sells parts and accessories and sells, leases and services Toyota vehicles and pre owned vehicles (the "Vehicles") on Principal's behalf.

### AGREEMENT

NOW, THEREFORE, in consideration of the recitals, which the parties agree to and agree are true and accurate, and the mutual covenants hereafter set forth, and other good and valuable consideration, the receipt and sufficiency of which are hereby mutually acknowledged, it is agreed between the parties hereto as follows:

1.    Appointment of Agent.  Principal hereby appoints Agent as its manager to operate the Dealership and sell parts and accessories and sell, lease and service the Vehicles on behalf of Principal, in accordance with the laws of the State of Florida and operating under Principal's Dealer License(s) and Agreement(s), and Agent does hereby accept such appointment and agrees to operate the Dealership and sell, lease and service the Vehicles pursuant to the terms and conditions set forth herein.  Agent shall not be required to expend any funds to repair or replace any portion of the Dealership building and improvements, or any furniture, fixtures or equipment owned by the Dealership unless damaged or destroyed by the grossly negligent act of Agent.

2.    Standards of Agent's Performance.  Agent agrees to diligently and faithfully sell parts and accessories and sell, lease and service the Vehicles in accordance with the customary business practices of Principal, and in accordance with the requirements of the laws of the State of Florida and Toyota Motor Sales ("Toyota") in the best interests of the Principal.  Agent further agrees that it shall not enter into any non-cancelable agreements or contracts affecting the Dealership that have a term extending beyond the term hereof, proceed with any capital improvement program, make any additions or alterations to the Real Property of the Dealership, or take any other action that would have a material long-term effect on the Dealership or Principal's obligations relating thereto without the written consent of Principal.  Notwithstanding the above, Agent has agreed to make available to Principal $300,000.00 in cash, in a segregated bank account, to be used in conjunction with available cash and capital of the Dealership for purposes of operating the Dealership during the term hereof.  The $300,000.00 additional cash will take the form of a loan to Principal and memorialized with a promissory note.  Should less than $300,000.00 be utilized by the Dealership, the promissory note shall be deemed amended to

reflect the actual amount, less than $300,000.00, actually utilized by the Dealership and Agent in the operation of the Dealership. Nothing herein shall be construed to require Agent to bring the net working capital of the Dealership up to Toyota standards. Agent and Principal acknowledge that the purpose of this Agreement is to provide short-term management and financial assistance while various approvals are obtained as required via the Interest Purchase Agreement ("IPA") entered into between Agent and Principal contemporaneously with this Agreement.

Notwithstanding the above, Agent shall:

(a)    Comply with, and cause the Principal to comply with, the policies and procedures contained in the Toyota Dealer Accounting Manual (the "Accounting Manual"); and, such other financial, accounting, business and management practices, controls and procedures as may be established by Principal from time to time, including, without limitation, the following:

(i)    The supervision of the preparation and submission to the Principal, on a timely basis, of current and accurate financial reports required by the Accounting Manual and such other reports as may be requested by the Principal from time to time;

(ii)    The installation and maintenance of the Dealer Information System electronic data processing facilities as available from Principal which will facilitate the transmission and reception of such data on the computer network as the Principal may require.

(b)    Comply with, and cause the Principal to comply with, in all material respects, all federal, state and local laws, rules and regulations which affect in any way the operation of the Principal's business, including, without limitation, those relating to (i) partnership income taxes and estimated income taxes, franchise taxes, ad valorem property taxes, registration and transfer fees and taxes, sales and use taxes; taxes relating to employees (including, without limitation, withholding taxes on wages, salaries and other remuneration of employees, and taxes imposed under the Federal Unemployment Tax Act and the Federal Insurance Contribution Act), and (ii) the ordering, sale and service of Toyota products sold pursuant to the Principal's Toyota Dealer Sales Agreement and the sales and service of used vehicles (including, without limitation, those related to motor vehicle safety, emissions control and customer service). Agent shall obtain and follow the counsel of the Principal's approved law firm or firms respecting compliance by the Principal with such federal, state and local laws, rules and regulations as may be applicable to the business of the Principal and provide the Principal with such information and assistance as may be reasonably requested in connect with the performance of obligations under such laws, rules and regulations;

(c)    Cause the Principal to maintain stocks of current models of such lines or series of Toyota vehicles, and parts and accessories thereof, of an assortment and in quantities adequate to meet the current and anticipated demand as consistent with the Principal's financial capacities.

(d)    Cause the Principal to comply with or observe the provisions of the Toyota Dealer Sales Agreement.

(e)    Carry on the business and operations of the Principal to comply in all respects, and remain in compliance, with all applicable federal, state, regional, county and local laws, statutes, rules, regulations or ordinances concerning public health and safety, and environment.

2

COMPOSITE EXHIBIT "B"

Agent's responsibility under this Section 2 shall be limited to the exercise of reasonable care and Agent shall have no obligation or liability for any obligation of the Dealership to others, save and except those specially provided for in this Agreement. Notwithstanding anything contained to the contrary, Agent shall have no responsibility, and shall not be deemed to have assumed any liability or obligation of the Principal or the Dealership.

3.     Limitations on Authority. Without the prior written consent of the Principal, the Agent shall not have the authority to cause the Principal to do any of the following:

(a)     Create, incur, assume or otherwise become or remain directly or indirectly liable for any indebtedness or other obligation for borrowed money, except for one or more floor plan lines of credit to be used for the sole purpose of financing the acquisition of new and used vehicle inventory, which will require approval of the Principal.

(b)     Sell, assign, pledge, transfer or otherwise dispose of any assets of the Principal, or any income or profits therefrom, except for sale of service, parts, body shop and sale and lease of vehicle inventory in the ordinary course of business.

(c)     Directly or indirectly create, incur, assume or permit to exist, any lien, security interest or other charge, restriction or encumbrance on the Principal's assets except for existing liens as of the Effective Date of this Agreement and liens on new and used vehicle inventory securing floor plans lines of credit.

(d)     Directly or indirectly create or become liable with respect to any contingent obligation except for (i) guaranties resulting from endorsement of negotiable instruments for collection in the ordinary course of business, and (ii) obligations, warranties and indemnities, not related to the indebtedness of any person, which are undertaken in the ordinary course of business.

(e)     Make any loans, advances or extensions of credit except in the ordinary course of business, or forgive, cancel, modify or waive any material debt or claim held by the Dealership.

(f)     Make any capital expenditure, or series of related capital expenditures, in excess of $10,000.00.

(g)     Make any debt or equity investment in, or acquire any stock or assets of, any other entity.

(h)     Enter into any transaction with any member or officer of the Principal, or any family member or affiliate of any member or officer of the Principal.

(i)     Initiate any lawsuit on behalf of the Principal other than routine collection matters.

(j)     Undertake any act or action in contravention of the provisions of the Principal's operating agreement.

3

**COMPOSITE EXHIBIT "B"**

4.    Term.  Subject to the provisions of Section 10 hereof, the term of this Agreement shall be for the period commencing on the Effective Date and end on the earlier of (i) the approval or denial of Agent's purchase pursuant to the IPA by Toyota Motors Sales, Inc. or Southeast Toyota, Inc.; (ii) three hundred and sixty-five (365) days thereafter; or (iii) upon the Closing as same is defined and provided for in the IPA. Sixty (60) day extensions may be granted, but only if mutually agreed to in writing by the parties.

5.    Separate Operating Account.  Agent has agreed to make available $300,000.00 in additional cash, in a segregated bank account, to be used in conjunction with available cash and capital of the Dealership.  Nothing herein requires Agent to bring the net working capital of the Dealership up to Toyota standards.  Agent is entitled to maintain a separate account for the $300,000.00 of additional cash, which account may be segregated from other operating accounts of the Dealership.  Agent shall be entitled to use available cash and capital of the Dealership to pay trade payables and other expenses of the Dealership, as well as utilizing the $300,000.00 of additional cash referred to herein.  Agent will continue to operate the Dealership on Principal's General Ledger.

6.    General Powers.  Subject to the terms of this Agreement, Agent shall have reasonable discretion in the manner and process of operating the Dealership and selling parts and accessories and selling, leasing and servicing the Vehicles, including, without limitation, credit policies and all phases of advertising, promotion and publicity relating to the sale, leasing and servicing of the Vehicles.

7.    Management Fee of Agent.  In consideration of the management services to be rendered by Agent hereunder, the Principal shall pay to Agent a monthly management fee (the "Management Fee") as follows:

    (a)    A Management Fee of fifty-eight percent (58%) of the monthly Net Income of the Principal (as defined below) for the period commencing on the Effective Date and ending on the date of termination of this Agreement.

    (b)    Monthly, the Net Income of the Principal shall be determined as set forth on the Principal's Manufacturer's financial statements for the applicable period which shall be prepared in accordance with the manufacturers' required accounting practices provided, that the following items shall not be used in calculating profits or losses: (i) no income taxes shall be deducted; and (ii) any item of income and expense that should have been properly accrued under generally accepted accounting principles prior to the effective date of this Agreement. For purposes of Net Income rent charged to Principal for its real estate lease shall not exceed $50,000.00 per month, plus taxes, insurance and maintenance (in a triple net manner provided by the Lease).  Losses from prior periods during the term shall be carried forward and applied against Net Income in future periods.  The Management Fee shall be considered a "Dealer Bonus" in the Principal's Manufacturer's financial statements.  Further, in determining the Management Fee payable hereunder, the expense of the Management Fee shall not be included in order to compute the Net Income of the Principal.  In determining profits and losses for the purpose of this Section 7(b), only income and expenses of Principal during or applicable to the term shall be considered, it being the intention of the parties that Agent shall not be responsible for any activity of the Principal prior to the effective date of this Agreement.  Except as modified hereby, the existing

4

**COMPOSITE EXHIBIT "B"**

expense structure of the Dealership shall remain in place, or agreed to by Principal, including the payment of a management fee to LHT Real Estate, LLC in the amount of $60,000.00 per month.

(c)    Fifty percent (50%) of the Management Fee shall be payable within fifteen (15) days of the end of each month based upon year to date Net Income of the Principal during the term hereof, less any amounts previously paid to Agent with respect to the Management Fee for such year and the balance within thirty (30) days. The final annual Net Income of the Principal shall be determined by the Principal's certified public accounting firm on or before March 15 of each year for the prior fiscal year in accordance with generally accepted accounting principles, consistently applied. Any remaining Management Fee due to Agent not already paid during the previous year, shall be paid at such time. In the event the Agent has received Management Fee payments in excess of the amount determined due, such amounts shall be offset against the Management Fee next due to Agent.

8.    Covenants of Agent. Agent hereby covenants with the Principal as follows:

(a)    Best Efforts. Agent will at all times use its best business judgment in rendering the management services described herein.

(b)    Notices of Adverse Events. Agent will give the Principal prompt written notice in the event of either the filing or commencement of any action, suit, or proceeding against the Principal or the Dealership, or any development which is likely to result in a material adverse change in the condition or prospects (whether financial or otherwise) of the Principal or the Dealership.

9.    Indemnification.

(a)    Agent agrees to indemnify, defend and save Principal, its affiliates and their respective officers, directors, employees, agents, successors and assigns harmless from and against all losses, liabilities, claims, damages and costs (including, without limitation, reasonable attorneys' fees and costs) that may arise from Agent's gross negligence or intentional act (as defined by Florida law) in the management of the Dealership.

(b)    Principal agrees to indemnify, defend and save Agent, its affiliates and their respective officers, directors, employees, agents, successors and assigns harmless from and against all losses, liabilities, claims, damages and costs (including, without limitation, reasonable attorneys' fees and costs) that may arise from Principal's ownership and/or operation of the Dealership or Agents management of the Dealership, unless caused by the gross negligence or intentional act (as defined by Florida law) of Agent. Any and all liability associated with Principal's performance prior to the Effective Date of this Agreement shall be the sole responsibility of Principal. Principal agrees to release, defend, indemnify and hold Agent, its affiliates and their respective officers, directors, employees, agents, successors and assigns harmless from any and all costs, attorneys' fees, damages, losses and other liability for acts of Principal allegedly occurring before the term of this Agreement. Agent recognizes that Principal may have insurance coverage that would satisfy all or part of any claim by Agent against Principal for indemnification, and that Principal may, at its option, make demand upon its insurance carrier to respond to Agent's demand for indemnification.

5

10.   Termination Events.   This Agreement may be terminated prior to the expiration of its term under Section 4 effective upon the occurrence of any of the following:

(a)   by mutual written agreement of the Principal and Agent; or

(b)   by the Principal for good cause on twenty (20) days prior written notice to Agent, if Agent shall fail to cure such failure within twenty (20) calendar days after receipt of written notice from the Principal specifying in detail the good cause event upon which the notice of termination is based.   For purposes of this Agreement, the term "good cause" shall mean any one or more of the following events: (i) Agent's material breach of this Agreement; (ii) the commission of fraud against the Principal or misappropriation of any of the Principal's assets; (iii) engaging in conduct which is reasonably calculated to be injurious to the Principal or its Members; or (iv) the conviction of a crime involving dishonesty or theft; or

(c)   by Agent on thirty (30) days prior written notice to the Principal or by written notice to the Principal if the Principal fails to comply with any of its obligations under this Agreement, and the Principal shall fail to cure such default within twenty (20) days; or

(d)   by Principal upon the death or permanent disability of Agent.

11.   Effect of Termination.   Each party's right of termination under this Section is in addition to any other rights it may have under this Agreement or otherwise, and the exercise of a right of termination will not be an election of remedies.

12.   Principal's Employees.   Agent has the discretion to retain or terminate employees of the Dealership, other than the comptroller, if it chooses.   Notwithstanding the above, should Agent hire or terminate a general manager, general sales manager or service manager it shall confer with Howard Hubler.

13.   Governing Law; Venue.   This Agreement shall be construed, enforced and governed in all respects by the laws of the State of Florida.   The parties agree that the Courts of competent jurisdiction in St. Johns County, Florida, shall have exclusive jurisdiction for all matters and issues relative to this Agreement.

14.   Notices.   All notices, demands or other communications required or permitted to be given hereunder will be in writing, and any and all such items will be deemed to have been duly delivered upon personal delivery; or as of the third business day after mailing by United States mail, certified, return receipt requested, postage prepaid, addressed as follows; or as of the immediately following business day after deposit with Federal Express or a similar overnight courier service, addressed as follows; or as of the business day if by email to the email address set forth below:

6

COMPOSITE EXHIBIT "B"

If to Principal:

    Lighthouse Imports, LLC.
    2910 Saddle Club Road
    Greenwood, IN 46143-9214
    Attn:  Howard F. Hubler
    Email HHubler@lighthousetoyota.com

    with a copy to:

    J. Gregory Humphries, Esquire
    300 South Orange Avenue
    Suite 1000
    Orlando Florida 32801
    Email JHumphries@shutts.com

If to Purchaser:

    Werner TSA, LLC
    Attn:  Curtis G. Werner
    200 Mansell Court East
    Suite 510
    Roswell, Georgia 30076
    Email cwerner@wernerholdings.com

    with a copy to:

    Mark L. Ornstein, Esquire
    Killgore Pearlman Stamp Ornstein & Squires, P.A.
    2 South Orange Avenue / 5th Floor
    Orlando, Florida 32801
    Email mlornstein@kpsos.com

15.  Waiver of Breach.  No consent or waiver, express or implied, by any party hereto or of any breach or default by any other party hereto in the performance by the other of its obligations hereunder shall be deemed or construed to be a consent or waiver to or of any other breach or default in the performance by such other party of the same or any other obligations of such party hereunder.  Failure on the part of any party to complain of any act or failure to act of the other party or to declare the other party in default, irrespective of how long such failure continues, shall not constitute a waiver by such party of its rights hereunder.

16.  Attorney's Fees. In the event of any controversy, claim, or dispute between parties hereto arising out of or relating to this Agreement or the breach thereof, the prevailing party shall be entitled to receive reasonable expenses from the losing party, including attorneys' fees and costs.

7

**COMPOSITE EXHIBIT "B"**

17.   Miscellaneous.

(a)    Amendment.  This Agreement may not be modified or amended, at any time, except by an instrument in writing signed by all parties.

(b)    Entire Agreement.    This Agreement constitutes the entire agreement for management of the Dealership and between the parties pertaining to the subject matter contained herein and supersedes all prior guaranties, warranties, agreements, representations, and understandings of the parties.  Any change to or modification of this agreement must be in writing, signed by both parties hereto.

(c)    Headings.  The Subject headings of the paragraphs and subparagraphs of this Agreement are include for purpose of convenience only, and shall not affect the construction or interpretation of any of its provisions.

(d)    Severability.  If any term, condition, or, covenant of this Agreement shall be invalid or unenforceable to any extent or any application, and the remainder of this Agreement, and such term or provision except to such extent or in such application, shall not be affected thereby, then each and every term and provision of this Agreement shall be valid and enforced to the fullest extend and the broadest application permitted by law.

(e)    Counterparts. This Agreement may be executed in multiple counterparts, each of which shall be deemed to be original and all of which, when taken together, shall constitute one agreement. This Agreement may be executed by facsimile signature, and a facsimile signature shall constitute an original signature.

(f)    Relationship.  Agent and Principal shall not be construed as joint venturers or partners of each other and neither shall have the power to bind or obligate the other, except as specifically set forth in this Agreement.

(g)    Assignment.  The provisions of this Agreement shall be binding upon and inure to the benefit of the parties and their successors and assigns.  Neither party shall be permitted to assign its rights and obligations under this Agreement without the prior written consent of the other party.

(h)    Waiver of Jury Trial.  EACH OF THE PARTIES HERETO HEREBY KNOWINGLY, VOLUNTARILY AND WILLINGLY IRREVOCABLY WAIVES ANY AND ALL RIGHTS TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT AND ANY DOCUMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE PARTIES' ACCEPTANCE OF THIS AGREEMENT.

COMPOSITE EXHIBIT "B"

In Witness whereof as of the date stated above, the parties execute this Agreement and agree to be bound thereby.

PRINCIPAL:                              AGENT:

Lighthouse Imports, LLC                 Werner TSA, LLC
a Florida limited liability company     a Florida limited liability company

By: _____            By: X_____
    Howard F. Hubler                        Curtis G. Werner
    Managing Member                         Manager

9

COMPOSITE EXHIBIT "B"

### FIRST AMENDMENT TO LIGHTHOUSE IMPORTS, LLC'S
### MANAGEMENT AGREEMENT

THIS FIRST AMENDMENT TO LIGHTHOUSE IMPORTS, LLC'S MANAGEMENT AGREEMENT (this "Amendment") is made and entered on this 19th day of January (the "Effective Date"), by and between Werner TSA, LLC, a Florida limited liability company and/or its assigns ("Agent"), and Lighthouse Imports, LLC, a Florida limited liability company ("Principal").

#### RECITALS

WHEREAS, Principal and Agent entered into that certain Lighthouse Imports, LLC's Management Agreement dated August 24, 2011 for Manager to manage Principal's Dealership located in St. Augustine (the "Management Agreement"); and

WHEREAS, Principal and Agent desire to amend the Term of the Management Agreement as more fully set forth herein.

#### AGREEMENT

NOW, THEREFORE, for and in consideration of the foregoing promises (which are hereby incorporated into this Amendment) and the representations, warranties and agreements contained herein and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereby agree as follows:

1.    Recitals. Principal and Agent agree that the above recitals are true and correct and are incorporated herein by this reference.

2.    Modification to Section 4 "Term." Section 4 shall be deleted in its entirety and replaced with the following:

4.    Term. Subject to the provisions of Section 10 hereof, the term of this Agreement shall be for the period commencing on the Effective Date and end on the earlier of: (i) denial of Agent's purchase pursuant to the IPA by Toyota Motors Sales, Inc. or Southeast Toyota, Inc. or Principal's payment in full of that certain Amended Promissory Note of even date herewith, as may be amended from time to time by the parties hereto; or (ii) upon the Closing as same is defined and provided for in the IPA.

3.    Miscellaneous. Except as modified by this Amendment, the Management Agreement remains in full force and effect. This Amendment may be executed in multiple counterparts, each of which shall be an original and all of which, when taken together, shall be one and the same instrument. To facilitate execution of this Amendment, the parties may execute and exchange counterparts of the signature pages by facsimile transmission or by electronic mail in "portable document format" form.

**COMPOSITE EXHIBIT "B"**

The parties have executed this First Amendment to Lighthouse Imports, LLC's Management Agreement the day and year first above written.

PRINCIPAL:                                    AGENT:

Lighthouse Imports, LLC                        Werner TSA, LLC
a Florida limited liability company            a Florida limited liability company

By: _____                    By: _____
    Howard C. Hubler                                Curtis G. Werner
    Managing Member                                 Manager

2

**COMPOSITE EXHIBIT "B"**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:                                          CASE NO. 6:12-bk-14459-KSJ
                                                Chapter 11

LIGHTHOUSE IMPORTS, LLC

Debtor.
_____/

## PROOF OF CLAIM (UNSECURED)

1.      The undersigned, of the firm of Burr & Forman, LLP, 200 South Orange Avenue, Suite 800, Orlando, Florida 32801, is the attorney for CURTIS G. WERNER, and is authorized to make this proof of claim.

2.      The Debtor was, at the time of filing of the petition, and still is indebted (or liable) to this claimant, in the total sum of $1,156,657.56 as of the date of filing of the Debtor's bankruptcy petition (October 24, 2012), consisting of the principal sum of $1,100,000.00, together with accrued interest of $56,657.56 as of October 24, 2012.

3.      The consideration for this debt (or grounds of liability) is as follows: *see:* Demand Promissory Note dated August, 2011, a true and correct copy of which is attached hereto as Exhibit "A"; Amended and Restated Demand Promissory Note dated January 19, 2012, a true and correct copy of which is attached hereto as Exhibit "B"; Second Amended and Restated Demand Promissory Note dated February 17, 2012, a true and correct copy of which is attached hereto as Exhibit "C"; Third Amended and Restated Demand Promissory Note dated March 19, 2012, a true and correct copy of which is attached hereto as Exhibit "D"; and Fourth Amended and Restated Demand Promissory Note dated April 19, 2012, a true and correct copy of which is attached hereto as Exhibit "E".

4.      The writings on which this claim is founded (or a duplicate thereof), is attached as Exhibits "A", "B", "C", "D", and "E" to this Proof of Claim.

Unless it is attached hereto or its absence is explained herein, no note or other negotiable instrument has been received for the account or any part of it.

5.      The amounts of all payments on this claim have been credited and deducted for the purpose of making this proof of claim.

6.      This claim is not subject to any setoff or counterclaim.

**COMPOSITE EXHIBIT "C"**

ｊ

7.    This is an unsecured claim, in the principal amount of $1,100,000.00, plus interest, costs and attorneys' fees.

Total Amount Claimed $1,156,657.56 (plus costs and fees)

Claim No. _____
(Office use only)

CURTIS G. WERNER

By: /s/ Jon E. Kane
       JON E. KANE, ESQUIRE, His Attorney
       Florida Bar No. 814202
       Burr & Forman, LLP
       200 South Orange Avenue, Suite 800
       Orlando, Florida 32801
       Telephone: (407) 540-6625
       Facsimile: (407) 540-6601

       Dated:        January 15, 2013

2

**COMPOSITE EXHIBIT "C"**

SATISFACTION: The debt evidenced by this Note has been satisfied in full this _____ day of _____, 20_____.

Signed: _____

## DEMAND PROMISSORY NOTE

$300,000.00

August ___, 2011
St. Augustine, Florida

FOR VALUE RECEIVED, LIGHTHOUSE IMPORTS, LLC, whose address is 2995 US Highway 1 South, St. Augustine, Florida 32086 ("Maker"), promises to pay to the order of CURTIS G. WERNER, and / or in his assigns ("Payee"), the principal sum of Three Hundred Thousand and no/100 Dollars ($300,000.00), or such amount as may have been advanced hereunder to Maker, together with interest from the date hereof at the rate of five percent (5%) per annum on the unpaid balance until paid or until default, both principal and interest being payable in lawful money of the United States of America c/o Curtis G. Werner, 200 Mansell Court, Suite 510, Roswell Georgia, 30076, or at such other place as the legal holder hereof may designate in writing from time to time.

1.    Basis for Loan. This Note is issued by Maker to Payee in connection with the purchase of a Membership Interest in Maker pursuant to that certain Interest Purchase Agreement between payee's affiliate entity and Maker's majority in interest Member, Howard F. Hubler of even date herewith (the "Interest Purchase Agreement"), which is fully incorporated herein by reference.

2.    Security for Repayment. This Note is secured by the personal guaranty of Howard F. Hubler (the "Guarantor") attached hereto and incorporated herein by this reference (the "Guaranty").

3.    Terms of Repayment. Principal and interest shall be due and payable on Demand or thirty (30) days after the termination of that certain Management Agreement entered into as of the date hereof between Maker and Werner New, LLC and/or its assigns. If not demanded earlier, in Payee's sole discretion, the outside maturity date of this Note shall be December 1, 2011 (the "Maturity Date").

4.    Prepayment. This Note may be prepaid in full or in part at any time on or before the Maturity Date without penalty or premium. Partial prepayments shall be applied first to accrued interest due on the unpaid principal balance and then to the unpaid principal balance.

5.    Event of Default. This is a demand note and repayment of the obligations can be required absent an Event of Default. An "Event of Default" shall occur under this Note upon the happening of any one or more of the following events which is not cured within the applicable cure period (or, if no cure period is prescribed, then within thirty (30) days of receipt by Maker of notice of default from Payee; provided, however, if such breach or default is not reasonably susceptible of cure by Maker within such thirty (30) day period, then within such additional period of time as is reasonably necessary in the exercise of good faith and promptness to effect

Page 1 of 6

EXHIBIT
A

**COMPOSITE EXHIBIT "C"**

such cure): (i) failure to make payment of the principal or interest as and when due hereunder if not paid within fifteen (15) days after becoming due and payable; (ii) any breach or default in payment or performance by Maker or Guarantor of any other obligation to Payee or Payee's affiliate under that certain Dealership Management Agreement and Interest Purchase Agreement of even date herewith; (iii) termination of that certain Dealership Management Agreement being entered into on even date herewith, for any reason whatsoever, except as a result of the default of the Agent, as defined in such agreement, other than Closing under that certain Interest Purchase Agreement being entered into on even date herewith; (iv) the sale of substantially all of the assets of Maker; (v) the death of Howard F. Hubler; (vi) the dissolution, receivership, bankruptcy (voluntary or involuntary), or assignment for the benefit of creditors or reorganization under any bankruptcy or similar laws of the Maker or Guarantor.

6.    Acceleration; Event of Default. Upon the happening of an Event of Default, the entire unpaid principal balance of this Note, together with any accrued interest or other amounts due hereunder, shall immediately become due and payable without notice or demand. After the occurrence of an Event of Default, the entire principal balance due hereunder together with all interest accrued hereunder shall bear interest at the rate of ten percent (10%) per annum.

7.    Costs of Enforcement; Cumulative Remedies. Upon an Event of Default, the Payee may employ an attorney to enforce the Payee's rights and remedies and Maker and any principal, surety, Guarantor and endorsers of this Note hereby agree to pay to the holder, in addition to the unpaid principal and interest hereof, to the extent allowed by law, reasonable attorneys' fees and costs of collection. The rights and remedies of the holder as provided in this Note and the Guaranty shall be cumulative and may be pursued singly, successively or together.

8.    Consideration for Note, Waiver of Notice and Other Rights. Maker acknowledges the sufficiency and receipt of the full consideration required of Payee for this Note and that this Note is the legal and binding obligation of the Maker, enforceable in accordance with its terms. Maker represents, warrants and agrees that Maker is obligated to Payee in the amount of this Note, without setoff, defense or counterclaim of any kind or nature.

All parties to this Note, including Maker and Guarantor (together with any endorsers, sureties or other guarantors), hereby waive presentment for payment, demand, protest, notice of nonpayment or dishonor, and any and all other notices and demands whatsoever, and any and all defenses on the grounds of: (a) any extension of time for payment which may be granted by the Payee or any other amendment to or modification of this Note; (b) any release, surrender, exchange, modification or substitution of any security for this Note; and (c) any failure to assert any legal rights available to Payee. All parties to this Note, including Maker and Guarantor (together with any endorsers, sureties or other guarantors), agree to remain bound until the entire indebtedness evidenced by this Note is paid in full.

No waiver by Payee of any right or remedy under this Note shall be effective unless in a writing signed by Payee. Neither the failure nor the delay in enforcing any right, power or privilege under this Note will operate as a waiver or release of any such right, power or privilege and no single or cumulative exercise of any such right, power or privilege by Payee will preclude any other or further exercise of such right, power or privilege or the exercise of any other right,

2

COMPOSITE EXHIBIT "C"

power or privilege. To the maximum extent permitted by law: (1) no claim or right of Payee arising out of this Note can be discharged by Payee, in whole or in part, by a waiver or renunciation of the claim or right unless in a writing signed by Payee; (2) no waiver that may be given to Maker will be applicable except in the specific instance for which it is given; and (3) no notice to or demand on Maker will be deemed to be a waiver of any obligation of Maker or of the right of Payee to take further action without notice or demand as provided in this Note.

9. Governing Law. This Note shall be governed by and construed in accordance with the laws of the State of Florida.

10. Severability. Wherever possible, each provision of this Note shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Note or portion thereof shall be prohibited by or invalid under such law, such provisions shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Note.

11. Addresses for Notices. All notices and other communications provided for by this Note must be in writing (including telecopy communication) and sent by registered mail or certified mail, return receipt requested, or first class express mail or overnight courier, or by telecopy; in all cases with charges prepaid. Notices are effective when delivered against a receipt therefor or when telecopy transmission is confirmed, as the case may be. All notices are to be sent to the applicable party at the address provided below or to such other address indicated by a party in a writing which satisfies the requirements of this section.

If to Maker:      Lighthouse Imports, LLC
                           2995 US Highway 1 South
                           St. Augustine, Florida 32086

If to Guarantor:     Howard F. Hubler
                           2910 Saddle Club Road
                           Greenwood, Indiana 46143

If to Payee:       Curtis G. Werner.
                           200 Mansell Court, Suite 510
                           Roswell, Georgia 30076

12. Parties in Interest. This Note shall bind Maker and its successors and assigns and inure to the benefit of Payee and its successors and assigns. Maker may not assign or delegate any rights or obligations hereunder without the prior written consent of Payee.

13. Jurisdiction. Maker hereby consents that any action or proceeding against it be commenced and maintained in any court within St. Johns County, Florida, and agrees that the courts of such State shall have jurisdiction with respect to the subject matter hereof and the person of Maker. Maker further agrees not to assert any defense to any action or proceeding initiated by Payee based upon improper venue or inconvenient forum.

3

COMPOSITE EXHIBIT "C"

14.   Controlling Document.  To the extent that this Note conflicts with or is in any way incompatible with any other document related specifically to the loan evidenced by this Note, this Note shall control over any other such document, and if this Note does not address an issue, then each other such document shall control to the extent that it deals most specifically with an issue.

15.   NOTICE OF FINAL AGREEMENT.  OTHER THAN THE DOCUMENTS EXECUTED BETWEEN MAKER AND PAYEE'S AFFILIATE ENTITY ON EVEN DATE HEREWITH, THIS WRITTEN PROMISSORY NOTE REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.   THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

State of Florida Documentary Stamp Tax required by law in the amount of $1,050.00, and Intangible Tax in the amount of $0.00 have been paid to the Clerk of Court for the County of St. Johns, State of Florida.

IN WITNESS WHEREOF, Maker has signed and sealed this Note effective the day and year first above written.

LIGHTHOUSE IMPORTS, LLC, a
Florida limited liability company

By: Howard R. Hubler,
Its: Managing Member & President

4

## PERSONAL GUARANTY OF HOWARD F. HUBLER

In order to induce Curtis G. Werner (hereinafter "Payee") into making a loan to Lighthouse Imports, LLC, together with other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned, Howard F. Hubler (hereinafter "Guarantor") irrevocably guarantees repayment of a loan to be made to Lighthouse Imports, LLC (hereinafter "Maker") in the principal amount of $300,000.00, or such amount as may have been advanced thereunder, with interest at five percent (5%) per annum on the unpaid balance. Payee is unwilling to advance funds to Maker unless Guarantor guarantees payment of this Note. If Lighthouse Imports, LLC defaults in the satisfaction of such indebtedness according to the terms of the attached Promissory Note, Guarantor will, on demand, pay to Payee, or his assignee, the total amount due at the time of such default. Guarantor shall also pay to Payee, or his assignee, on demand, reasonable attorneys' fees and all costs and other expenses incurred by him in collecting the guaranteed indebtedness from Maker, in enforcing this guaranty against Guarantor, or in the defense of any action against Payee hereunder.

If legal action is taken to enforce this guaranty or any provision of this guaranty, such action may be maintained alone, or joined with any action or other proceeding against Maker, Guarantor covenants and agrees that Payee may proceed directly against Maker, Guarantor, or any of them individually or in any combination, without first proceeding or making claim or exhausting any remedy against Maker or pursuant any particular remedy or remedies available to Payee.

The undersigned expressly agrees that the validity and enforceability of this Guaranty and the obligations and liabilities of the guarantor hereunder shall in no way be terminated, affected or impaired by reason of any modification, indulgence, compromise, settlement, variation of terms, renewal or extension of the Promissory Note, and the undersigned hereby consents to any such modification, renewal and extension.

The Guarantor agrees that he shall have no right of subrogation against Maker or collateral securing this Note (if any), unless and until Payee shall have received payment in full of all sums due under the Note.

The undersigned hereby waives and renounces any and all exemption rights under or by virtue of the laws of any state or the United States, and further waives all notice, demand, protest, presentment, notice of demand, notice of default, diligence, protest, presentment and non-payment.

This guaranty may be enforced by Payee without first resorting to or exhausting any security or collateral and without first having instituted legal proceedings for payment on the Note or any of other remedies through foreclosure proceedings or otherwise. The Guarantor acknowledges the sufficiency and receipt of the full consideration required for the Guarantor's guaranty provided herein and that this

5

guaranty is the legal and binding obligation of the Guarantor enforceable in accordance with its terms.

_____
Howard F. Hubler

SWORN TO AND SUBSCRIBED before me this 2‍4 day of August, 2011, by Howard F. Hubler, who is ☒ personally known to me, or ☐ who has produced _____ as identification.

[SEAL]

NOTARY PUBLIC, STATE OF FLORIDA
My Commission Expires: _____

6

SATISFACTION: The debt evidenced by this Amended Note has been satisfied in full this _____ day of _____, 20_____.

Signed: _____

## AMENDED AND RESTATED
## DEMAND PROMISSORY NOTE

$650,000.00

January 19, 2012
St. Augustine, Florida

THIS AMENDED AND RESTATED DEMAND PROMISSORY NOTE AMENDS AND RESTATES THAT CERTAIN DEMAND PROMISSORY NOTE DATED AUGUST 24, 2011 IN THE AMOUNT OF THREE HUNDRED THOUSAND AND NO/100 DOLLARS ($300,000.00), AS MODIFIED BY THAT CERTAIN FUTURE ADVANCE ACKNOWLEDGEMENT LETTER DATED OCTOBER 19, 2011 PROVIDING FOR AN ADDITIONAL LOAN OF ONE HUNDRED THOUSAND AND NO/100 DOLLARS ($100,000.00).

FOR VALUE RECEIVED, LIGHTHOUSE IMPORTS, LLC, whose address is 2995 US Highway 1 South, St. Augustine, Florida 32086 ("Maker"), promises to pay to the order of CURTIS G. WERNER, and / or in his assigns ("Payee"), the principal sum of Six Hundred Fifty Thousand and no/100 Dollars ($650,000.00), or such amount as may have been advanced hereunder to Maker, together with interest from the date hereof at the rate of five percent (5%) per annum on the unpaid balance until paid or until default, both principal and interest being payable in lawful money of the United States of America c/o Curtis G. Werner, 200 Mansell Court, Suite 510, Roswell Georgia, 30076, or at such other place as the legal holder hereof may designate in writing from time to time.

1.      Basis for Loan. This Amended and Restated Demand Promissory Note (this "Amended Note") is issued by Maker to Payee in connection with the purchase of a Membership Interest in Maker pursuant to that certain Interest Purchase Agreement between payee's affiliate entity and Maker's majority in interest Member, Howard F. Hubler dated August 24, 2011, as amended (the "Interest Purchase Agreement"), which is fully incorporated herein by reference.

Maker and Payee acknowledge that an original Demand Promissory Note dated August 24, 2011 was executed and delivered to Payee reflecting an original principal sum of Three Hundred Thousand and no/100 Dollars ($300,000.00) (the "Original Note"), and that Maker received an additional One Hundred Thousand and no/100 Dollars ($100,000.00) thereafter pursuant to that certain Future Advance Acknowledgement Letter dated October 19, 2011 (the "Future Advance Letter"). Payee is lending an additional Two Hundred Fifty Thousand and no/100 Dollars ($250,000.00) on even date herewith, the total loan amount being reflected above. Maker and Payee agree and acknowledge that this Amended Note replaces and supersedes the Original Note and the Future Advance Letter in their entirety. Notwithstanding the forgoing, Maker remains obligated for all interest accrued under the Original Note and the Future Advance Letter.

Page 1 of 7



EXHIBIT
B

**COMPOSITE EXHIBIT "C"**

2.      Security for Repayment. This Amended Note is secured by the personal guaranty of Howard F. Hubler (the "Guarantor") attached hereto and incorporated herein by this reference (the "Guaranty").

3.      Terms of Repayment. Principal and interest shall be due and payable on Demand or thirty (30) days after the termination of that certain Management Agreement, as amended on even date herewith, entered into as of the date hereof between Maker and Werner TSA, LLC and/or its assigns. If not demanded earlier, in Payee's sole discretion, the outside maturity date of this Amended Note shall be December 1, 2012 (the "Maturity Date").

4.      Prepayment. This Amended Note may be prepaid in full or in part at any time on or before the Maturity Date without penalty or premium. Partial prepayments shall be applied first to accrued interest due on the unpaid principal balance and then to the unpaid principal balance.

5.      Event of Default. This is a demand note and repayment of the obligations can be required absent an Event of Default. An "Event of Default" shall occur under this Amended Note upon the happening of any one or more of the following events which is not cured within the applicable cure period (or, if no cure period is prescribed, then within thirty (30) days of receipt by Maker of notice of default from Payee; provided, however, if such breach or default is not reasonably susceptible of cure by Maker within such thirty (30) day period, then within such additional period of time as is reasonably necessary in the exercise of good faith and promptness to effect such cure): (i) failure to make payment of the principal or interest as and when due hereunder if not paid within fifteen (15) days after becoming due and payable; (ii) any breach or default in payment or performance by Maker or Guarantor of any other obligation to Payee or Payee's affiliate under that certain Dealership Management Agreement dated August 24, 2011 (the "Management Agreement") and the Interest Purchase Agreement; (iii) termination of the Dealership Management Agreement, for any reason whatsoever, except as a result of the default of the Agent, as defined in such agreement, other than Closing under the Interest Purchase Agreement; (iv) the sale of substantially all of the assets of Maker; (v) the death of Howard F. Hubler; (vi) the dissolution, receivership, bankruptcy (voluntary or involuntary), or assignment for the benefit of creditors or reorganization under any bankruptcy or similar laws of the Maker or Guarantor.

6.      Acceleration; Event of Default. Upon the happening of an Event of Default, the entire unpaid principal balance of this Amended Note, together with any accrued interest or other amounts due hereunder, shall immediately become due and payable without notice or demand. After the occurrence of an Event of Default, the entire principal balance due hereunder together with all interest accrued hereunder shall bear interest at the rate of ten percent (10%) per annum.

7.      Costs of Enforcement; Cumulative Remedies. Upon an Event of Default, the Payee may employ an attorney to enforce the Payee's rights and remedies and Maker and any principal, surety, Guarantor and endorsers of this Amended Note hereby agree to pay to the holder, in addition to the unpaid principal and interest hereof, to the extent allowed by law, reasonable attorneys' fees and costs of collection. The rights and remedies of the holder as provided in this Amended Note and the Guaranty shall be cumulative and may be pursued singly, successively or together.

COMPOSITE EXHIBIT "C"

8.    **Consideration for Note, Waiver of Notice and Other Rights.** Maker acknowledges the sufficiency and receipt of the full consideration required of Payee for this Amended Note and that this Amended Note is the legal and binding obligation of the Maker, enforceable in accordance with its terms. Maker represents, warrants and agrees that Maker is obligated to Payee in the amount of this Amended Note, without setoff, defense or counterclaim of any kind or nature.

All parties to this Amended Note, including Maker and Guarantor (together with any endorsers, sureties or other guarantors), hereby waive presentment for payment, demand, protest, notice of nonpayment or dishonor, and any and all other notices and demands whatsoever, and any and all defenses on the grounds of: (a) any extension of time for payment which may be granted by the Payee or any other amendment to or modification of this Amended Note; (b) any release, surrender, exchange, modification or substitution of any security for this Amended Note; and (c) any failure to assert any legal rights available to Payee. All parties to this Amended Note, including Maker and Guarantor (together with any endorsers, sureties or other guarantors), agree to remain bound until the entire indebtedness evidenced by this Amended Note is paid in full.

No waiver by Payee of any right or remedy under this Amended Note shall be effective unless in a writing signed by Payee. Neither the failure nor the delay in enforcing any right, power or privilege under this Amended Note will operate as a waiver or release of any such right, power or privilege and no single or cumulative exercise of any such right, power or privilege by Payee will preclude any other or further exercise of such right, power or privilege or the exercise of any other right, power or privilege. To the maximum extent permitted by law: (1) no claim or right of Payee arising out of this Amended Note can be discharged by Payee, in whole or in part, by a waiver or renunciation of the claim or right unless in a writing signed by Payee; (2) no waiver that may be given to Maker will be applicable except in the specific instance for which it is given; and (3) no notice to or demand on Maker will be deemed to be a waiver of any obligation of Maker or of the right of Payee to take further action without notice or demand as provided in this Amended Note.

9.    **Governing Law.** This Amended Note shall be governed by and construed in accordance with the laws of the State of Florida.

10.    **Severability.** Wherever possible, each provision of this Amended Note shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Amended Note or portion thereof shall be prohibited by or invalid under such law, such provisions shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Amended Note.

11.    **Addresses for Notices.** All notices and other communications provided for by this Amended Note must be in writing (including telecopy communication) and sent by registered mail or certified mail, return receipt requested, or first class express mail or overnight courier, or by telecopy, in all cases with charges prepaid. Notices are effective when delivered against a receipt therefor or when telecopy transmission is confirmed, as the case may be. All notices are to be sent to the applicable party at the address provided below or to such other address indicated by a party in a writing which satisfies the requirements of this section.

3

**COMPOSITE EXHIBIT "C"**

| If to Maker: | Lighthouse Imports, LLC |
|---|---|
| | 2995 US Highway 1 South |
| | St. Augustine, Florida 32086 |
| If to Guarantor: | Howard F. Hubler |
| | 2910 Saddle Club Road |
| | Greenwood, Indiana 46143 |
| If to Payee: | Curtis G. Werner, |
| | 200 Mansell Court, Suite 510 |
| | Roswell, Georgia 30076 |

12.    **Parties in Interest.** This Amended Note shall bind Maker and its successors and assigns and inure to the benefit of Payee and its successors and assigns. Maker may not assign or delegate any rights or obligations hereunder without the prior written consent of Payee.

13.    **Jurisdiction.** Maker hereby consents that any action or proceeding against it be commenced and maintained in any court within St. Johns County, Florida, and agrees that the courts of such State shall have jurisdiction with respect to the subject matter hereof and the person of Maker. Maker further agrees not to assert any defense to any action or proceeding initiated by Payee based upon improper venue or inconvenient forum.

14.    **Controlling Document.** To the extent that this Amended Note conflicts with or is in any way incompatible with any other document related specifically to the loan evidenced by this Amended Note, this Amended Note shall control over any other such document, and if this Amended Note does not address an issue, then each other such document shall control to the extent that it deals most specifically with an issue.

15.    **NOTICE OF FINAL AGREEMENT. OTHER THAN THE DOCUMENTS EXECUTED BETWEEN MAKER AND PAYEE'S AFFILIATE ENTITY ON AUGUST 24, 2011, THIS WRITTEN AMENDED DEMAND PROMISSORY NOTE REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

The maximum State of Florida Documentary Stamp Tax required by law for unsecured notes of $2,450.00 will be paid by Maker to the Florida Department of Revenue.

4

**COMPOSITE EXHIBIT "C"**

IN WITNESS WHEREOF, Maker has signed and sealed this Amended Note effective the day and year first above written.

LIGHTHOUSE IMPORTS, LLC, a
Florida limited liability company

By: Howard R. Hubler,
Its: Managing Member & President

5

**COMPOSITE EXHIBIT "C"**

## AMENDED AND RESTATED
## PERSONAL GUARANTY OF HOWARD F. HUBLER

In order to induce Curtis G. Werner (hereinafter "Payee") into making a loan to Lighthouse Imports, LLC, together with other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned, Howard F. Hubler (hereinafter "Guarantor") irrevocably guaranteed repayment of a loan to be made to Lighthouse Imports, LLC (hereinafter "Maker") in the principal amount of $300,000.00, or such amount as may have been advanced under that certain Demand Promissory Note dated August 24, 2011 (the "Original Note"). Thereafter, Payee and Maker executed that certain Future Advance Acknowledgement Letter dated October 19, 2011 memorializing the increase of the loan amount by $100,000.00 (the "Future Advance Letter"). Interest on the unpaid balance under the Original Note, Future Advance Letter, and that certain Amended and Restated Demand Promissory Note being executed by Payee and Maker on even date herewith in the combined amount of Six Hundred Fifty Thousand and no/100 Dollars ($650,000.00) (the "Amended Note") is accruing at five percent (5%) per annum.

Payee is unwilling to advance additional funds to Maker unless Guarantor unconditionally guarantees payment of this Amended Note, as may be mutually increased by the parties from time to time. This guarantee is continuing and unlimited as to amount. If Lighthouse Imports, LLC defaults in the satisfaction of such indebtedness according to the terms of the attached Promissory Note, Guarantor will, on demand, pay to Payee, or his assignee, the total amount due at the time of such default. Guarantor shall also pay to Payee, or his assignee, on demand, reasonable attorneys' fees and all costs and other expenses incurred by him in collecting the guaranteed indebtedness from Maker; in enforcing this guaranty against Guarantor; or in the defense of any action against Payee hereunder.

If legal action is taken to enforce this guaranty or any provision of this guaranty, such action may be maintained alone, or joined with any action or other proceeding against Maker. Guarantor covenants and agrees that Payee may proceed directly against Maker, Guarantor, or any of them individually or in any combination, without first proceeding or making claim or exhausting any remedy against Maker or pursuant any particular remedy or remedies available to Payee.

The undersigned expressly agrees that the validity and enforceability of this Guaranty and the obligations and liabilities of the guarantor hereunder shall in no way be terminated, affected or impaired by reason of any modification, indulgence, compromise, settlement, variation of terms, renewal or extension of the Promissory Note, and the undersigned hereby consents to any such modification, renewal and extension.

The Guarantor agrees that he shall have no right of subrogation against Maker or collateral securing this Amended Note (if any), unless and until Payee shall have received payment in full of all sums due under the Note.

6

**COMPOSITE EXHIBIT "C"**

The undersigned hereby waives and renounces any and all exemption rights under or by virtue of the laws of any state or the United States, and further waives all notice, demand, protest, presentment, notice of demand, notice of default, diligence, protest, presentment and non-payment.

This guaranty may be enforced by Payee without first resorting to or exhausting any security or collateral and without first having instituted legal proceedings for payment on the Note or any of other remedies through foreclosure proceedings or otherwise. The Guarantor acknowledges the sufficiency and receipt of the full consideration required for the Guarantor's guaranty provided herein and that this guaranty is the legal and binding obligation of the Guarantor enforceable in accordance with its terms.

Howard F. Hubler

SWORN TO AND SUBSCRIBED before me this 19 day of January 19, 2012, by Howard F. Hubler, who is ☐ personally known to me, or ☐ who has produced _____ as identification.

TAMMY WEEKS
MY COMMISSION # DD757608
EXPIRES February 11, 2012
(407) 398-0153   FloridaNotaryService.com

NOTARY PUBLIC, STATE OF FLORIDA
My Commission Expires: 2/17/12

[SEAL]

7

**COMPOSITE EXHIBIT "C"**

SATISFACTION: The debt evidenced by this Amended Note has been satisfied in full this
_____ day of _____, 20____.

Signed: _____

## SECOND AMENDED AND RESTATED
## DEMAND PROMISSORY NOTE

$800,000.00

February 17, 2012
St. Augustine, Florida

THIS SECOND AMENDED AND RESTATED DEMAND PROMISSORY NOTE
AMENDS AND RESTATES IN ITS ENTIRETY THAT CERTAIN AMENDED AND
RESTATED DEMAND PROMISSORY NOTE DATED JANUARY 19, 2012 IN THE
PRINCIPAL AMOUNT OF SIX HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS
($650,000.00).

FOR VALUE RECEIVED, LIGHTHOUSE IMPORTS, LLC, whose address is 2995
US Highway 1 South, St. Augustine, Florida 32086 ("Maker"), promises to pay to the order of
CURTIS G. WERNER, and / or in his assigns ("Payee"), the principal sum of Eight Hundred
Thousand and no/100 Dollars ($800,000.00), or such amount as may have been advanced
hereunder to Maker, together with interest from the date hereof at the rate of five percent (5%) per
annum on the unpaid balance until paid or until default, both principal and interest being payable in
lawful money of the United States of America c/o Curtis G. Werner, 200 Mansell Court, Suite 510,
Roswell Georgia, 30076, or at such other place as the legal holder hereof may designate in writing
from time to time.

1.      Basis for Loan. This Second Amended and Restated Demand Promissory Note
(this "Amended Note") is issued by Maker to Payee in connection with the purchase of a
Membership Interest in Maker pursuant to that certain Interest Purchase Agreement between
payee's affiliate entity and Maker's majority in interest Member, Howard F. Hubler dated
August 24, 2011, as amended (the "Interest Purchase Agreement"), which is fully incorporated
herein by reference.

Maker and Payee acknowledge that an original Demand Promissory Note dated
August 24, 2011 was executed and delivered to Payee reflecting an original principal sum of
Three Hundred Thousand and no/100 Dollars ($300,000.00) (the "Original Note"), and that
Maker received an additional One Hundred Thousand and no/100 Dollars ($100,000.00)
thereafter pursuant to that certain Future Advance Acknowledgement Letter dated October 19,
2011 (the "Future Advance Letter"), and an additional Two Hundred Fifty Thousand and no/100
Dollars ($250,000.00) thereafter pursuant to that certain Amended and Restated Demand
Promissory Note dated January 19, 2012 (the "First Amended Note"). Payee is lending an
additional One Hundred Fifty Thousand and no/100 Dollars ($150,000.00) on even date
herewith; the total loan amount being reflected above. MAKER AND PAYEE AGREE AND
ACKNOWLEDGE THAT THIS AMENDED NOTE REPLACES AND SUPERSEDES THE
ORIGINAL NOTE, THE FUTURE ADVANCE LETTER, AND THE FIRST AMENDED

EXHIBIT

C

NOTE IN THEIR ENTIRETY.   Notwithstanding the forgoing, Maker remains obligated for all interest accrued under the Original Note, the Future Advance Letter and the First Amended Note.

2.      Security for Repayment. This Amended Note is secured by the personal guaranty of Howard F. Hubler (the "Guarantor") attached hereto and incorporated herein by this reference (the "Guaranty").

3.      Terms of Repayment. Principal and interest shall be due and payable on Demand or thirty (30) days after the termination of that certain Management Agreement, as amended on even date herewith, entered into as of the date hereof between Maker and Werner TSA, LLC and/or its assigns.  If not demanded earlier, in Payee's sole discretion, the outside maturity date of this Amended Note shall be December 1, 2012 (the "Maturity Date").

4.      Prepayment. This Amended Note may be prepaid in full or in part at any time on or before the Maturity Date without penalty or premium. Partial prepayments shall be applied first to accrued interest due on the unpaid principal balance and then to the unpaid principal balance.

5.      Event of Default. This is a demand note and repayment of the obligations can be required absent an Event of Default. An "Event of Default" shall occur under this Amended Note upon the happening of any one or more of the following events which is not cured within the applicable cure period (or, if no cure period is prescribed, then within thirty (30) days of receipt by Maker of notice of default from Payee; provided, however, if such breach or default is not reasonably susceptible of cure by Maker within such thirty (30) day period, then within such additional period of time as is reasonably necessary in the exercise of good faith and promptness to effect such cure): (i) failure to make payment of the principal or interest as and when due hereunder if not paid within fifteen (15) days after becoming due and payable; (ii) any breach or default in payment or performance by Maker or Guarantor of any other obligation to Payee or Payee's affiliate under that certain Dealership Management Agreement dated August 24, 2011 (the "Management Agreement") and the Interest Purchase Agreement; (iii) termination of the Dealership Management Agreement , for any reason whatsoever, except as a result of the default of the Agent, as defined in such agreement, other than Closing under the Interest Purchase Agreement; (iv) the sale of substantially all of the assets of Maker; (v) the death of Howard F. Hubler; (vi) the dissolution, receivership, bankruptcy (voluntary or involuntary), or assignment for the benefit of creditors or reorganization under any bankruptcy or similar laws of the Maker or Guarantor.

6.      Acceleration; Event of Default. Upon the happening of an Event of Default, the entire unpaid principal balance of this Amended Note, together with any accrued interest or other amounts due hereunder, shall immediately become due and payable without notice or demand. After the occurrence of an Event of Default, the entire principal balance due hereunder together with all interest accrued hereunder shall bear interest at the rate of ten percent (10%) per annum.

7.      Costs of Enforcement; Cumulative Remedies. Upon an Event of Default, the Payee may employ an attorney to enforce the Payee's rights and remedies and Maker and any principal, surety, Guarantor and endorsers of this Amended Note hereby agree to pay to the holder, in addition to the unpaid principal and interest hereof, to the extent allowed by law,

**COMPOSITE EXHIBIT "C"**

reasonable attorneys' fees and costs of collection. The rights and remedies of the holder as provided in this Amended Note and the Guaranty shall be cumulative and may be pursued singly, successively or together.

8. **Consideration for Note, Waiver of Notice and Other Rights.** Maker acknowledges the sufficiency and receipt of the full consideration required of Payee for this Amended Note and that this Amended Note is the legal and binding obligation of the Maker, enforceable in accordance with its terms. Maker represents, warrants and agrees that Maker is obligated to Payee in the amount of this Amended Note, without setoff, defense or counterclaim of any kind or nature.

All parties to this Amended Note, including Maker and Guarantor (together with any endorsers, sureties or other guarantors), hereby waive presentment for payment, demand, protest, notice of nonpayment or dishonor, and any and all other notices and demands whatsoever, and any and all defenses on the grounds of: (a) any extension of time for payment which may be granted by the Payee or any other amendment to or modification of this Amended Note; (b) any release, surrender, exchange, modification or substitution of any security for this Amended Note; and (c) any failure to assert any legal rights available to Payee. All parties to this Amended Note, including Maker and Guarantor (together with any endorsers, sureties or other guarantors), agree to remain bound until the entire indebtedness evidenced by this Amended Note is paid in full.

No waiver by Payee of any right or remedy under this Amended Note shall be effective unless in a writing signed by Payee. Neither the failure nor the delay in enforcing any right, power or privilege under this Amended Note will operate as a waiver or release of any such right, power or privilege and no single or cumulative exercise of any such right, power or privilege by Payee will preclude any other or further exercise of such right, power or privilege or the exercise of any other right, power or privilege. To the maximum extent permitted by law: (1) no claim or right of Payee arising out of this Amended Note can be discharged by Payee, in whole or in part, by a waiver or renunciation of the claim or right unless in a writing signed by Payee; (2) no waiver that may be given to Maker will be applicable except in the specific instance for which it is given; and (3) no notice to or demand on Maker will be deemed to be a waiver of any obligation of Maker or of the right of Payee to take further action without notice or demand as provided in this Amended Note.

9. **Governing Law.** This Amended Note shall be governed by and construed in accordance with the laws of the State of Florida.

10. **Severability.** Wherever possible, each provision of this Amended Note shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Amended Note or portion thereof shall be prohibited by or invalid under such law, such provisions shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Amended Note.

11. **Addresses for Notices.** All notices and other communications provided for by this Amended Note must be in writing (including telecopy communication) and sent by registered mail or certified mail, return receipt requested, or first class express mail or overnight

**COMPOSITE EXHIBIT "C"**

courier, or by telecopy, in all cases with charges prepaid. Notices are effective when delivered against a receipt therefor or when telecopy transmission is confirmed, as the case may be. All notices are to be sent to the applicable party at the address provided below or to such other address indicated by a party in a writing which satisfies the requirements of this section.

| | |
|---|---|
| If to Maker: | Lighthouse Imports, LLC |
| | 2995 US Highway 1 South |
| | St. Augustine, Florida 32086 |
| If to Guarantor: | Howard F. Hubler |
| | 2910 Saddle Club Road |
| | Greenwood, Indiana 46143 |
| If to Payee: | Curtis G. Werner |
| | 200 Mansell Court, Suite 510 |
| | Roswell, Georgia 30076 |

12.    Parties in Interest. This Amended Note shall bind Maker and its successors and assigns and inure to the benefit of Payee and its successors and assigns. Maker may not assign or delegate any rights or obligations hereunder without the prior written consent of Payee.

13.    Jurisdiction. Maker hereby consents that any action or proceeding against it be commenced and maintained in any court within St. Johns County, Florida, and agrees that the courts of such State shall have jurisdiction with respect to the subject matter hereof and the person of Maker. Maker further agrees not to assert any defense to any action or proceeding initiated by Payee based upon improper venue or inconvenient forum.

14.    Controlling Document. To the extent that this Amended Note conflicts with or is in any way incompatible with any other document related specifically to the loan evidenced by this Amended Note, this Amended Note shall control over any other such document, and if this Amended Note does not address an issue, then each other such document shall control to the extent that it deals most specifically with an issue.

15.    NOTICE OF FINAL AGREEMENT. OTHER THAN THE DOCUMENTS EXECUTED BETWEEN MAKER AND PAYEE'S AFFILIATE ENTITY ON AUGUST 24, 2011, THIS WRITTEN AMENDED DEMAND PROMISSORY NOTE REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

DOCUMENTARY STAMP TAX IS NOT REQUIRED BECAUSE THIS NOTE WAS EXECUTED AND DELIVERED OUTSIDE THE STATE OF FLORIDA.

4

COMPOSITE EXHIBIT "C"

IN WITNESS WHEREOF, Maker has signed and sealed this Amended Note effective the day and year first above written.

LIGHTHOUSE IMPORTS, LLC, a
Florida limited liability company

By: Howard F. Hubler,
Its: Managing Member & President

5

**COMPOSITE EXHIBIT "C"**

## AMENDED AND RESTATED
## PERSONAL GUARANTY OF HOWARD F. HUBLER

In order to induce Curtis G. Werner (hereinafter "Payee") into making a loan to Lighthouse Imports, LLC, together with other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned, Howard F. Hubler (hereinafter "Guarantor") irrevocably guaranteed repayment of a loan to be made to Lighthouse Imports, LLC (hereinafter "Maker") in the principal amount of $300,000.00, or such amount as may have been advanced under that certain Demand Promissory Note dated August 24, 2011 (the "Original Note"). Thereafter, Payee and Maker executed that certain Future Advance Acknowledgement Letter dated October 19, 2011 memorializing the increase of the loan amount by $100,000.00 (the "Future Advance Letter"). Thereafter, Maker executed that certain Amended and Restated Demand Promissory Note dated January 19, 2012 reflecting an increase of the loan amount by $250,000.00 (the "First Amended Note"). Interest on the unpaid balance under the Original Note, Future Advance Letter, that certain Amended and Restated Demand Promissory Note, and that certain Second Amended and Restated Demand Promissory Note being executed by Payee and Maker on even date herewith in the combined amount of Eight Hundred Thousand and no/100 Dollars ($800,000.00) (the "Amended Note") is accruing at five percent (5%) per annum.

Payee is unwilling to advance additional funds to Maker unless Guarantor unconditionally guarantees payment of this Amended Note, as may be mutually increased by the parties from time to time. This guarantee is continuing and unlimited as to amount. If Lighthouse Imports, LLC defaults in the satisfaction of such indebtedness according to the terms of the attached Promissory Note, Guarantor will, on demand, pay to Payee, or his assignee, the total amount due at the time of such default. Guarantor shall also pay to Payee, or his assignee, on demand, reasonable attorneys' fees and all costs and other expenses incurred by him in collecting the guaranteed indebtedness from Maker; in enforcing this guaranty against Guarantor; or in the defense of any action against Payee hereunder.

If legal action is taken to enforce this guaranty or any provision of this guaranty, such action may be maintained alone, or joined with any action or other proceeding against Maker. Guarantor covenants and agrees that Payee may proceed directly against Maker, Guarantor, or any of them individually or in any combination, without first proceeding or making claim or exhausting any remedy against Maker or pursuant any particular remedy or remedies available to Payee.

The undersigned expressly agrees that the validity and enforceability of this Guaranty and the obligations and liabilities of the guarantor hereunder shall in no way be terminated, affected or impaired by reason of any modification, indulgence, compromise, settlement, variation of terms, renewal or extension of the Promissory Note, and the undersigned hereby consents to any such modification, renewal and extension.

6

**COMPOSITE EXHIBIT "C"**

The Guarantor agrees that he shall have no right of subrogation against Maker or collateral securing this Amended Note (if any), unless and until Payee shall have received payment in full of all sums due under the Note.

The undersigned hereby waives and renounces any and all exemption rights under or by virtue of the laws of any state or the United States, and further waives all notice, demand, protest, presentment, notice of demand, notice of default, diligence, protest, presentment and non-payment.

This guaranty may be enforced by Payee without first resorting to or exhausting any security or collateral and without first having instituted legal proceedings for payment on the Note or any of other remedies through foreclosure proceedings or otherwise. The Guarantor acknowledges the sufficiency and receipt of the full consideration required for the Guarantor's guaranty provided herein and that this guaranty is the legal and binding obligation of the Guarantor enforceable in accordance with its terms.

_____
Howard F. Hubler

SWORN TO AND SUBSCRIBED before me this _17th_ day of February 17, 2012, by Howard F. Hubler, who is ☒ personally known to me, or ☐ who has produced _Driver's license_ as identification.

[NOTARY PUBLIC SEAL INDIANA]

_____
NOTARY PUBLIC, STATE OF FLORIDA
My Commission Expires: _12/8/18_

[SEAL]

7

**COMPOSITE EXHIBIT "C"**

SATISFACTION: The debt evidenced by this Third Amended and Restated Demand Promissory Note has been satisfied in full this _____ day of _____, 20_____.

Signed: _____

## THIRD AMENDED AND RESTATED
## DEMAND PROMISSORY NOTE

$950,000.00

March 19, 2012
St. Augustine, Florida

THIS THIRD AMENDED AND RESTATED DEMAND PROMISSORY NOTE AMENDS, RESTATES AND SUPERSEDES IN ITS ENTIRETY THAT CERTAIN SECOND AMENDED AND RESTATED DEMAND PROMISSORY NOTE DATED FEBRUARY 17, 2012 IN THE PRINCIPAL AMOUNT OF EIGHT HUNDRED THOUSAND AND NO/100 DOLLARS ($800,000.00), AS AMENDED.

FOR VALUE RECEIVED, LIGHTHOUSE IMPORTS, LLC, whose address is 2995 US Highway 1 South, St. Augustine, Florida 32086 ("Maker"), promises to pay to the order of CURTIS G. WERNER, and / or in his assigns ("Payee"), the principal sum of Nine Hundred Fifty Thousand and no/100 Dollars ($950,000.00), or such amount as may have been advanced hereunder to Maker, together with interest from the date hereof at the rate of five percent (5%) per annum on the unpaid balance until paid or until default, both principal and interest being payable in lawful money of the United States of America c/o Curtis G. Werner, 200 Mansell Court, Suite 510, Roswell Georgia, 30076, or at such other place as the legal holder hereof may designate in writing from time to time.

1.     **Basis for Loan.** This Third Amended and Restated Demand Promissory Note (this "Third Amended Note") is issued by Maker to Payee in connection with the purchase of a Membership Interest in Maker pursuant to that certain Interest Purchase Agreement between payee's affiliate entity and Maker's majority in interest Member, Howard F. Hubler dated August 24, 2011, as amended (the "Interest Purchase Agreement"), which is fully incorporated herein by reference.

Maker and Payee acknowledge that an original Demand Promissory Note dated August 24, 2011 was executed and delivered to Payee reflecting an original principal sum of Three Hundred Thousand and no/100 Dollars ($300,000.00) (the "Original Note"), and that Maker received an additional One Hundred Thousand and no/100 Dollars ($100,000.00) thereafter pursuant to that certain Future Advance Acknowledgement Letter dated October 19, 2011 (the "Future Advance Letter"), and an additional Two Hundred Fifty Thousand and no/100 Dollars ($250,000.00) thereafter pursuant to that certain Amended and Restated Demand Promissory Note dated January 19, 2012 (the "First Amended Note") and an additional One Hundred Fifty Thousand and no/100 Dollars ($150,000.00) thereafter pursuant to that certain Second Amended and restated Demand Promissory Note dated February 17, 2012 (the "Second Amended Note"). Payee is lending an additional One Hundred Fifty Thousand and no/100 Dollars ($150,000.00) on even date herewith, the total loan amount being reflected above. MAKER AND PAYEE AGREE AND ACKNOWLEDGE THAT THIS THIRD AMENDED

EXHIBIT
D

NOTE REPLACES AND SUPERSEDES THE ORIGINAL NOTE, THE FUTURE ADVANCE LETTER, THE FIRST AMENDED NOTE AND THE SECOND AMENDED NOTE IN THEIR ENTIRETY.  Notwithstanding the forgoing, Maker remains obligated for all interest accrued under the Original Note, the Future Advance Letter, the First Amended Note and the Second Amended Note.

2.    Security for Repayment.  This Third Amended Note is secured by the personal guaranty of Howard F. Hubler (the "Guarantor") attached hereto and incorporated herein by this reference (the "Guaranty").

3.    Terms of Repayment.  Principal and interest shall be due and payable on Demand or thirty (30) days after the termination of that certain Management Agreement, as amended on even date herewith, entered into as of the date hereof between Maker and Werner TSA, LLC and/or its assigns.  If not demanded earlier, in Payee's sole discretion, the outside maturity date of this Third Amended Note shall be December 1, 2012 (the "Maturity Date").

4.    Prepayment.  This Third Amended Note may be prepaid in full or in part at any time on or before the Maturity Date without penalty or premium.  Partial prepayments shall be applied first to accrued interest due on the unpaid principal balance and then to the unpaid principal balance.

5.    Event of Default.  This is a demand note and repayment of the obligations can be required absent an Event of Default.  An "Event of Default" shall occur under this Third Amended Note upon the happening of any one or more of the following events which is not cured within the applicable cure period (or, if no cure period is prescribed, then within thirty (30) days of receipt by Maker of notice of default from Payee; provided, however, if such breach or default is not reasonably susceptible of cure by Maker within such thirty (30) day period, then within such additional period of time as is reasonably necessary in the exercise of good faith and promptness to effect such cure): (i) failure to make payment of the principal or interest as and when due hereunder if not paid within fifteen (15) days after becoming due and payable; (ii) any breach or default in payment or performance by Maker or Guarantor of any other obligation to Payee or Payee's affiliate under that certain Dealership Management Agreement dated August 24, 2011 (the "Management Agreement") and the Interest Purchase Agreement; (iii) termination of the Dealership Management Agreement , for any reason whatsoever, except as a result of the default of the Agent, as defined in such agreement, other than Closing under the Interest Purchase Agreement; (iv) the sale of substantially all of the assets of Maker; (v) the death of Howard F. Hubler; (vi) the dissolution, receivership, bankruptcy (voluntary or involuntary), or assignment for the benefit of creditors or reorganization under any bankruptcy or similar laws of the Maker or Guarantor.

6.    Acceleration; Event of Default.  Upon the happening of an Event of Default, the entire unpaid principal balance of this Third Amended Note, together with any accrued interest or other amounts due hereunder, shall immediately become due and payable without notice or demand.  After the occurrence of an Event of Default, the entire principal balance due hereunder together with all interest accrued hereunder shall bear interest at the rate of ten percent (10%) per annum.

COMPOSITE EXHIBIT "C"

7.    Costs of Enforcement; Cumulative Remedies. Upon an Event of Default, the Payee may employ an attorney to enforce the Payee's rights and remedies and Maker and any principal, surety, Guarantor and endorsers of this Third Amended Note hereby agree to pay to the holder, in addition to the unpaid principal and interest hereof, to the extent allowed by law, reasonable attorneys' fees and costs of collection. The rights and remedies of the holder as provided in this Third Amended Note and the Guaranty shall be cumulative and may be pursued singly, successively or together.

8.    Consideration for Note, Waiver of Notice and Other Rights. Maker acknowledges the sufficiency and receipt of the full consideration required of Payee for this Third Amended Note and that this Third Amended Note is the legal and binding obligation of the Maker, enforceable in accordance with its terms. Maker represents, warrants and agrees that Maker is obligated to Payee in the amount of this Third Amended Note, without setoff, defense or counterclaim of any kind or nature.

All parties to this Third Amended Note, including Maker and Guarantor (together with any endorsers, sureties or other guarantors), hereby waive presentment for payment, demand, protest, notice of nonpayment or dishonor, and any and all other notices and demands whatsoever, and any and all defenses on the grounds of: (a) any extension of time for payment which may be granted by the Payee or any other amendment to or modification of this Third Amended Note; (b) any release, surrender, exchange, modification or substitution of any security for this Third Amended Note; and (c) any failure to assert any legal rights available to Payee. All parties to this Third Amended Note, including Maker and Guarantor (together with any endorsers, sureties or other guarantors), agree to remain bound until the entire indebtedness evidenced by this Third Amended Note is paid in full.

No waiver by Payee of any right or remedy under this Third Amended Note shall be effective unless in a writing signed by Payee. Neither the failure nor the delay in enforcing any right, power or privilege under this Third Amended Note will operate as a waiver or release of any such right, power or privilege and no single or cumulative exercise of any such right, power or privilege by Payee will preclude any other or further exercise of such right, power or privilege or the exercise of any other right, power or privilege. To the maximum extent permitted by law: (1) no claim or right of Payee arising out of this Third Amended Note can be discharged by Payee, in whole or in part, by a waiver or renunciation of the claim or right unless in a writing signed by Payee; (2) no waiver that may be given to Maker will be applicable except in the specific instance for which it is given; and (3) no notice to or demand on Maker will be deemed to be a waiver of any obligation of Maker or of the right of Payee to take further action without notice or demand as provided in this Third Amended Note.

9.    Governing Law. This Third Amended Note shall be governed by and construed in accordance with the laws of the State of Florida.

10.    Severability. Wherever possible, each provision of this Third Amended Note shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Third Amended Note or portion thereof shall be prohibited by or invalid under such law, such provisions shall be ineffective to the extent of such prohibition or invalidity,

COMPOSITE EXHIBIT "C"

without invalidating the remainder of such provision or the remaining provisions of this Third Amended Note.

11.    **Addresses for Notices.**  All notices and other communications provided for by this Third Amended Note must be in writing (including telecopy communication) and sent by registered mail or certified mail, return receipt requested, or first class express mail or overnight courier, or by telecopy, in all cases with charges prepaid.  Notices are effective when delivered against a receipt therefor or when telecopy transmission is confirmed, as the case may be.  All notices are to be sent to the applicable party at the address provided below or to such other address indicated by a party in a writing which satisfies the requirements of this section.

|  |  |
|---|---|
| If to Maker: | Lighthouse Imports, LLC<br>2995 US Highway 1 South<br>St. Augustine, Florida 32086 |
| If to Guarantor: | Howard F. Hubler<br>2910 Saddle Club Road<br>Greenwood, Indiana 46143 |
| If to Payee: | Curtis G. Werner.<br>200 Mansell Court, Suite 510<br>Roswell, Georgia 30076 |

12.    **Parties in Interest.**  This Third Amended Note shall bind Maker and its successors and assigns and inure to the benefit of Payee and its successors and assigns.  Maker may not assign or delegate any rights or obligations hereunder without the prior written consent of Payee.

13.    **Jurisdiction.**  Maker hereby consents that any action or proceeding against it be commenced and maintained in any court within St. Johns County, Florida, and that the courts of such State shall have jurisdiction with respect to the subject matter hereof and the person of Maker.  Maker further agrees not to assert any defense to any action or proceeding initiated by Payee based upon improper venue or inconvenient forum.

14.    **Controlling Document.**  To the extent that this Third Amended Note conflicts with or is in any way incompatible with any other document related specifically to the loan evidenced by this Third Amended Note, this Third Amended Note shall control over any other such document, and if this Third Amended Note does not address an issue, then each other such document shall control to the extent that it deals most specifically with an issue.

15.    NOTICE OF FINAL AGREEMENT.  OTHER THAN THE DOCUMENTS EXECUTED BETWEEN MAKER AND PAYEE'S AFFILIATE ENTITY ON AUGUST 24, 2011, THIS WRITTEN AMENDED DEMAND PROMISSORY NOTE REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR

**COMPOSITE EXHIBIT "C"**

SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.    THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

DOCUMENTARY STAMP TAX IS NOT REQUIRED BECAUSE THIS NOTE WAS EXECUTED AND DELIVERED OUTSIDE THE STATE OF FLORIDA.

IN WITNESS WHEREOF, Maker has signed and sealed this Third Amended Note effective the day and year first above written.

LIGHTHOUSE IMPORTS, LLC, a
Florida limited liability company.

By: Howard F. Hubler,
Its: Managing Member & President

**COMPOSITE EXHIBIT "C"**

## AMENDED AND RESTATED
## PERSONAL GUARANTY OF HOWARD F. HUBLER

In order to induce Curtis G. Werner (hereinafter "Payee") into making a loan to Lighthouse Imports, LLC, together with other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned, Howard F. Hubler (hereinafter "Guarantor") irrevocably guaranteed repayment of a loan to be made to Lighthouse Imports, LLC (hereinafter "Maker") in the principal amount of $300,000.00, or such amount as may have been advanced under that certain Demand Promissory Note dated August 24, 2011 (the "Original Note"). Thereafter, Payee and Maker executed that certain Future Advance Acknowledgement Letter dated October 19, 2011 memorializing the increase of the loan amount by $100,000.00 (the "Future Advance Letter"). Thereafter, Maker executed that certain Amended and Restated Demand Promissory Note dated January 19, 2012 reflecting an increase of the loan amount by $250,000.00 (the "First Amended Note"). Thereafter, Maker executed that certain Second Amended and Restated Demand Promissory Note dated February 17, 2012 reflecting an increase of the loan amount by $250,000.00 (the "Second Amended Note"). Interest on the unpaid balance under the Original Note, Future Advance Letter, that certain Amended and Restated Demand Promissory Note, that certain Second Amended and Restated Demand Promissory Note and that certain Third Amended and Restated Demand Promissory Note being executed by Payee and Maker on even date herewith in the combined amount of Nine Hundred Fifty Thousand and no/100 Dollars ($950,000.00) (the "Third Amended Note") is accruing at five percent (5%) per annum.

Payee is unwilling to advance additional funds to Maker unless Guarantor unconditionally guarantees payment of this Amended Note, as may be mutually increased by the parties from time to time. This guarantee is continuing and unlimited as to amount. If Lighthouse Imports, LLC defaults in the satisfaction of such indebtedness according to the terms of the attached Promissory Note, Guarantor will, on demand, pay to Payee, or his assignee, the total amount due at the time of such default. Guarantor shall also pay to Payee, or his assignee, on demand, reasonable attorneys' fees and all costs and other expenses incurred by him in collecting the guaranteed indebtedness from Maker; in enforcing this guaranty against Guarantor; or in the defense of any action against Payee hereunder.

If legal action is taken to enforce this guaranty or any provision of this guaranty, such action may be maintained alone, or joined with any action or other proceeding against Maker. Guarantor covenants and agrees that Payee may proceed directly against Maker, Guarantor, or any of them individually or in any combination, without first proceeding or making claim or exhausting any remedy against Maker or pursuant any particular remedy or remedies available to Payee.

The undersigned expressly agrees that the validity and enforceability of this Guaranty and the obligations and liabilities of the guarantor hereunder shall in no way be terminated, affected or impaired by reason of any modification, indulgence, compromise,

COMPOSITE EXHIBIT "C"

settlement, variation of terms, renewal or extension of the Promissory Note, and the undersigned hereby consents to any such modification, renewal and extension.

The Guarantor agrees that he shall have no right of subrogation against Maker or collateral securing this Amended Note (if any), unless and until Payee shall have received payment in full of all sums due under the Note.

The undersigned hereby waives and renounces any and all exemption rights under or by virtue of the laws of any state or the United States, and further waives all notice, demand, protest, presentment, notice of demand, notice of default, diligence, protest, presentment and non-payment.

This guaranty may be enforced by Payee without first resorting to or exhausting any security or collateral and without first having instituted legal proceedings for payment on the Note or any of other remedies through foreclosure proceedings or otherwise. The Guarantor acknowledges the sufficiency and receipt of the full consideration required for the Guarantor's guaranty provided herein and that this guaranty is the legal and binding obligation of the Guarantor enforceable in accordance with its terms.

Howard F. Hubler

---

SWORN TO AND SUBSCRIBED before me this 10th day of March, 2012, by Howard F. Hubler, who is ☒ personally known to me, or ☐ who has produced _____ as identification.

[SEAL]

Meghan May

NOTARY PUBLIC, STATE OF FLORIDA INDIANA

My Commission Expires: 3/20/17

**COMPOSITE EXHIBIT "C"**

SATISFACTION: The debt evidenced by this Fourth Amended and Restated Demand Promissory Note has been satisfied in full this _____ day of _____, 20_____.

Signed: _____

## FOURTH AMENDED AND RESTATED
## DEMAND PROMISSORY NOTE

$1,100,000.00

April 19, 2012
St. Augustine, Florida

THIS FOURTH AMENDED AND RESTATED DEMAND PROMISSORY NOTE AMENDS, RESTATES AND SUPERSEDES IN ITS ENTIRETY THAT CERTAIN THIRD AMENDED AND RESTATED DEMAND PROMISSORY NOTE DATED MARCH 19, 2012 IN THE PRINCIPAL AMOUNT OF NINE HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS ($950,000.00), AS AMENDED.

FOR VALUE RECEIVED, LIGHTHOUSE IMPORTS, LLC, whose address is 2995 US Highway 1 South, St. Augustine, Florida 32086 ("Maker"), promises to pay to the order of CURTIS G. WERNER, and / or in his assigns ("Payee"), the principal sum of One Million One Hundred Thousand and no/100 Dollars ($1,100,000.00), or such amount as may have been advanced hereunder to Maker, together with interest from the date hereof at the rate of five percent (5%) per annum on the unpaid balance until paid or until default, both principal and interest being payable in lawful money of the United States of America c/o Curtis G. Werner, 200 Mansell Court, Suite 510, Roswell Georgia, 30076, or at such other place as the legal holder hereof may designate in writing from time to time.

1. **Basis for Loan.** This Fourth Amended and Restated Demand Promissory Note (this "Fourth Amended Note") is issued by Maker to Payee in connection with the purchase of a Membership Interest in Maker pursuant to that certain Interest Purchase Agreement between payee's affiliate entity and Maker's majority in interest Member, Howard F. Hubler dated August 24, 2011, as amended (the "Interest Purchase Agreement"), which is fully incorporated herein by reference.

Maker and Payee acknowledge that an original Demand Promissory Note dated August 24, 2011 was executed and delivered to Payee reflecting an original principal sum of Three Hundred Thousand and no/100 Dollars ($300,000.00) (the "Original Note"), and that Maker received an additional One Hundred Thousand and no/100 Dollars ($100,000.00) thereafter pursuant to that certain Future Advance Acknowledgement Letter dated October 19, 2011 (the "Future Advance Letter"), and an additional Two Hundred Fifty Thousand and no/100 Dollars ($250,000.00) thereafter pursuant to that certain Amended and Restated Demand Promissory Note dated January 19, 2012 (the "First Amended Note") and an additional One Hundred Fifty Thousand and no/100 Dollars ($150,000.00) thereafter pursuant to that certain Second Amended and restated Demand Promissory Note dated February 17, 2012 (the "Second Amended Note") and an additional One Hundred Fifty Thousand and no/100 Dollars ($150,000.00) thereafter pursuant to that certain Third Amended and restated Demand Promissory Note dated March 19, 2012 (the "Third Amended Note"). Payee is lending an

EXHIBIT
E

additional One Hundred Fifty Thousand and no/100 Dollars ($150,000.00) on even date herewith, the total loan amount being reflected above. MAKER AND PAYEE AGREE AND ACKNOWLEDGE THAT THIS FOURTH AMENDED NOTE REPLACES AND SUPERSEDES THE ORIGINAL NOTE, THE FUTURE ADVANCE LETTER, THE FIRST AMENDED NOTE, THE SECOND AMENDED NOTE AND THE THIRD AMENDED NOTE IN THEIR ENTIRETY. Notwithstanding the forgoing, Maker remains obligated for all interest accrued under the Original Note, the Future Advance Letter, the First Amended Note, the Second Amended Note and the Third Amended Note.

2. **Security for Repayment.** This Fourth Amended Note is secured by the personal guaranty of Howard F. Hubler (the "Guarantor") attached hereto and incorporated herein by this reference (the "Guaranty").

3. **Terms of Repayment.** Principal and interest shall be due and payable on Demand or thirty (30) days after the termination of that certain Management Agreement, as amended on even date herewith, entered into as of the date hereof between Maker and Werner TSA, LLC and/or its assigns. If not demanded earlier, in Payee's sole discretion, the outside maturity date of this Fourth Amended Note shall be December 1, 2012 (the "Maturity Date").

4. **Prepayment.** This Fourth Amended Note may be prepaid in full or in part at any time on or before the Maturity Date without penalty or premium. Partial prepayments shall be applied first to accrued interest due on the unpaid principal balance and then to the unpaid principal balance.

5. **Event of Default.** This is a demand note and repayment of the obligations can be required absent an Event of Default. An "Event of Default" shall occur under this Fourth Amended Note upon the happening of any one or more of the following events which is not cured within the applicable cure period (or, if no cure period is prescribed, then within thirty (30) days of receipt by Maker of notice of default from Payee; provided, however, if such breach or default is not reasonably susceptible of cure by Maker within such thirty (30) day period, then within such additional period of time as is reasonably necessary in the exercise of good faith and promptness to effect such cure): (i) failure to make payment of the principal or interest as and when due hereunder if not paid within fifteen (15) days after becoming due and payable; (ii) any breach or default in payment or performance by Maker or Guarantor of any other obligation to Payee or Payee's affiliate under that certain Dealership Management Agreement dated August 24, 2011 (the "Management Agreement") and the Interest Purchase Agreement; (iii) termination of the Dealership Management Agreement, for any reason whatsoever, except as a result of the default of the Agent, as defined in such agreement, other than Closing under the Interest Purchase Agreement; (iv) the sale of substantially all of the assets of Maker; (v) the death of Howard F. Hubler; (vi) the dissolution, receivership, bankruptcy (voluntary or involuntary), or assignment for the benefit of creditors or reorganization under any bankruptcy or similar laws of the Maker or Guarantor.

6. **Acceleration; Event of Default.** Upon the happening of an Event of Default, the entire unpaid principal balance of this Fourth Amended Note, together with any accrued interest or other amounts due hereunder, shall immediately become due and payable without notice or demand. After the occurrence of an Event of Default, the entire principal balance due hereunder

COMPOSITE EXHIBIT "C"

together with all interest accrued hereunder shall bear interest at the rate of ten percent (10%) per annum.

7.     Costs of Enforcement; Cumulative Remedies.  Upon an Event of Default, the Payee may employ an attorney to enforce the Payee's rights and remedies and Maker and any principal, surety, Guarantor and endorsers of this Fourth Amended Note hereby agree to pay to the holder, in addition to the unpaid principal and interest hereof, to the extent allowed by law, reasonable attorneys' fees and costs of collection.  The rights and remedies of the holder as provided in this Fourth Amended Note and the Guaranty shall be cumulative and may be pursued singly, successively or together.

8.     Consideration for Note, Waiver of Notice and Other Rights.   Maker acknowledges the sufficiency and receipt of the full consideration required of Payee for this Fourth Amended Note and that this Fourth Amended Note is the legal and binding obligation of the Maker, enforceable in accordance with its terms.  Maker represents, warrants and agrees that Maker is obligated to Payee in the amount of this Fourth Amended Note, without setoff, defense or counterclaim of any kind or nature.

All parties to this Fourth Amended Note, including Maker and Guarantor (together with any endorsers, sureties or other guarantors), hereby waive presentment for payment, demand, protest, notice of nonpayment or dishonor, and any and all other notices and demands whatsoever, and any and all defenses on the grounds of: (a) any extension of time for payment which may be granted by the Payee or any other amendment to or modification of this Fourth Amended Note; (b) any release, surrender, exchange, modification or substitution of any security for this Fourth Amended Note; and (c) any failure to assert any legal rights available to Payee. All parties to this Fourth Amended Note, including Maker and Guarantor (together with any endorsers, sureties or other guarantors), agree to remain bound until the entire indebtedness evidenced by this Fourth Amended Note is paid in full.

No waiver by Payee of any right or remedy under this Fourth Amended Note shall be effective unless in a writing signed by Payee.  Neither the failure nor the delay in enforcing any right, power or privilege under this Fourth Amended Note will operate as a waiver or release of any such right, power or privilege and no single or cumulative exercise of any such right, power or privilege by Payee will preclude any other or further exercise of such right, power or privilege or the exercise of any other right, power or privilege.  To the maximum extent permitted by law: (1) no claim or right of Payee arising out of this Fourth Amended Note can be discharged by Payee, in whole or in part, by a waiver or renunciation of the claim or right unless in a writing signed by Payee; (2) no waiver that may be given to Maker will be applicable except in the specific instance for which it is given; and (3) no notice to or demand on Maker will be deemed to be a waiver of any obligation of Maker or of the right of Payee to take further action without notice or demand as provided in this Fourth Amended Note.

9.     Governing Law.  This Fourth Amended Note shall be governed by and construed in accordance with the laws of the State of Florida.

COMPOSITE EXHIBIT "C"

10.    **Severability.** Wherever possible, each provision of this Fourth Amended Note shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Fourth Amended Note or portion thereof shall be prohibited by or invalid under such law, such provisions shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Fourth Amended Note.

11.    **Addresses for Notices.** All notices and other communications provided for by this Fourth Amended Note must be in writing (including telecopy communication) and sent by registered mail or certified mail, return receipt requested, or first class express mail or overnight courier, or by telecopy, in all cases with charges prepaid. Notices are effective when delivered against a receipt therefor or when telecopy transmission is confirmed, as the case may be. All notices are to be sent to the applicable party at the address provided below or to such other address indicated by a party in a writing which satisfies the requirements of this section.

| | |
|---|---|
| If to Maker: | Lighthouse Imports, LLC |
| | 2995 US Highway 1 South |
| | St. Augustine, Florida 32086 |
| If to Guarantor: | Howard F. Hubler |
| | 2910 Saddle Club Road |
| | Greenwood, Indiana 46143 |
| If to Payee: | Curtis G. Werner, |
| | 200 Mansell Court, Suite 510 |
| | Roswell, Georgia 30076 |

12.    **Parties in Interest.** This Fourth Amended Note shall bind Maker and its successors and assigns and inure to the benefit of Payee and its successors and assigns. Maker may not assign or delegate any rights or obligations hereunder without the prior written consent of Payee.

13.    **Jurisdiction.** Maker hereby consents that any action or proceeding against it be commenced and maintained in any court within St. Johns County, Florida, and agrees that the courts of such State shall have jurisdiction with respect to the subject matter hereof and the person of Maker. Maker further agrees not to assert any defense to any action or proceeding initiated by Payee based upon improper venue or inconvenient forum.

14.    **Controlling Document.** To the extent that this Fourth Amended Note conflicts with or is in any way incompatible with any other document related specifically to the loan evidenced by this Fourth Amended Note, this Fourth Amended Note shall control over any other such document, and if this Fourth Amended Note does not address an issue, then each other such document shall control to the extent that it deals most specifically with an issue.

15.    **NOTICE OF FINAL AGREEMENT.** OTHER THAN THE DOCUMENTS EXECUTED BETWEEN MAKER AND PAYEE'S AFFILIATE ENTITY ON AUGUST 24,

**COMPOSITE EXHIBIT "C"**

2011, THIS WRITTEN AMENDED DEMAND PROMISSORY NOTE REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

DOCUMENTARY STAMP TAX IS NOT REQUIRED BECAUSE THIS NOTE WAS EXECUTED AND DELIVERED OUTSIDE THE STATE OF FLORIDA.

IN WITNESS WHEREOF, Maker has signed and sealed this Fourth Amended Note effective the day and year first above written.

LIGHTHOUSE IMPORTS, LLC, a
Florida limited liability company

By: Howard F. Huhler,
Its: Managing Member & President

**COMPOSITE EXHIBIT "C"**

## AMENDED AND RESTATED
## PERSONAL GUARANTY OF HOWARD F. HUBLER

In order to induce Curtis G. Werner (hereinafter "Payee") into making a loan to Lighthouse Imports, LLC, together with other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned, Howard F. Hubler (hereinafter "Guarantor") irrevocably guaranteed repayment of a loan to be made to Lighthouse Imports, LLC (hereinafter "Maker") in the principal amount of $300,000.00, or such amount as may have been advanced under that certain Demand Promissory Note dated August 24, 2011 (the "Original Note"). Thereafter, Payee and Maker executed that certain Future Advance Acknowledgement Letter dated October 19, 2011 memorializing the increase of the loan amount by $100,000.00 (the "Future Advance Letter"). Thereafter, Maker executed that certain Amended and Restated Demand Promissory Note dated January 19, 2012 reflecting an increase of the loan amount by $250,000.00 (the "First Amended Note"). Thereafter, Maker executed that certain Second Amended and Restated Demand Promissory Note dated February 17, 2012 reflecting an increase of the loan amount by $250,000.00 (the "Second Amended Note"). Thereafter, Maker executed that certain Third Amended and Restated Demand Promissory Note dated March 19, 2012 reflecting an increase of the loan amount by $150,000.00 (the "Third Amended Note"). Interest on the unpaid balance under the Original Note, Future Advance Letter, that certain Amended and Restated Demand Promissory Note, that certain Second Amended and Restated Demand Promissory Note, that certain Third Amended and Restated Demand Promissory Note and that certain Fourth Amended and Restated Demand Promissory Note being executed by Payee and Maker on even date herewith in the combined amount of One Million One Hundred Thousand and no/100 Dollars ($1,100,000.00) (the "Fourth Amended Note") is accruing at five percent (5%) per annum.

Payee is unwilling to advance additional funds to Maker unless Guarantor unconditionally guarantees payment of this Amended Note, as may be mutually increased by the parties from time to time. This guarantee is continuing and unlimited as to amount. If Lighthouse Imports, LLC defaults in the satisfaction of such indebtedness according to the terms of the attached Promissory Note, Guarantor will, on demand, pay to Payee, or his assignee, the total amount due at the time of such default. Guarantor shall also pay to Payee, or his assignee, on demand, reasonable attorneys' fees and all costs and other expenses incurred by him in collecting the guaranteed indebtedness from Maker; in enforcing this guaranty against Guarantor; or in the defense of any action against Payee hereunder.

If legal action is taken to enforce this guaranty or any provision of this guaranty, such action may be maintained alone, or joined with any action or other proceeding against Maker. Guarantor covenants and agrees that Payee may proceed directly against Maker, Guarantor, or any of them individually or in any combination, without first proceeding or making claim or exhausting any remedy against Maker or pursuant any particular remedy or remedies available to Payee.

**COMPOSITE EXHIBIT "C"**

The undersigned expressly agrees that the validity and enforceability of this Guaranty and the obligations and liabilities of the guarantor hereunder shall in no way be terminated, affected or impaired by reason of any modification, indulgence, compromise, settlement, variation of terms, renewal or extension of the Promissory Note, and the undersigned hereby consents to any such modification, renewal and extension.

The Guarantor agrees that he shall have no right of subrogation against Maker or collateral securing this Amended Note (if any), unless and until Payee shall have received payment in full of all sums due under the Note.

The undersigned hereby waives and renounces any and all exemption rights under or by virtue of the laws of any state or the United States, and further waives all notice, demand, protest, presentment, notice of demand, notice of default, diligence, protest, presentment and non-payment.

This guaranty may be enforced by Payee without first resorting to or exhausting any security or collateral and without first having instituted legal proceedings for payment on the Note or any of other remedies through foreclosure proceedings or otherwise. The Guarantor acknowledges the sufficiency and receipt of the full consideration required for the Guarantor's guaranty provided herein and that this guaranty is the legal and binding obligation of the Guarantor enforceable in accordance with its terms.

Howard F. Hubler

SWORN TO AND SUBSCRIBED before me this _16_ day of April, 2012, by Howard F. Hubler, who is ☑ personally known to me, or ☐ who has produced _____ as identification.

NOTARY PUBLIC, STATE OF FLORIDA
My Commission Expires: _4/11/84_

[SEAL]

**COMPOSITE EXHIBIT "C"**



WORLD OMNI

World Omni Financial Corp.
190 Jim Moran Boulevard
Deerfield Beach, Florida 33442
(954) 429-2200

January 19, 2012

Howard F. Hubler
Lighthouse Imports, LLC
LHT Real Estate, LLC
2995 U.S. Hwy 1 South
St. Augustine, FL 32086

      RE:   Loan Document Modification Proposal

Mr. Hubler:

Reference is made to (a) the St. Augustine Indicative Proposal dated September 23, 2011 (the "Indicative Proposal") submitted by World Omni Financial Corp. ("WOFCO") to Lighthouse Imports, LLC (the "Dealership"), LHT Real Estate, LLC (the "Borrower") and Howard F. Hubler ("Hubler"); and (b) the Forbearance Agreement dated September 30, 2011 (as extended by the extension letter dated December 2, 2011) among WOFCO, the Dealership, the Borrower and Hubler. The Dealership, the Borrower and Hubler are sometimes collectively referred to as "Borrower Parties".

Borrower Parties have previously entered into an Interest Purchase Agreement dated August 24, 2011 (as amended prior to the date hereof, the "IPA") with Werner TSA, LLC ("Werner TSA") pursuant to which, among other things, Werner TSA would acquire an ownership interest in the Dealership and make certain capital contributions to the Dealership (the "Investment").

Subject to the terms and conditions set forth below in this letter, and based upon the immediate capital needs of the Dealership, WOFCO is prepared to memorialize the Indicative Proposal, further extend the "Forbearance Period" under the Forbearance Agreement until March 30, 2012 (pursuant to a separate extension letter dated January 19, 2012 by WOFCO to Borrower Parties), and defer mortgage principal under the mortgage loan to Borrower beginning with the January 2012 payment until the earlier of (a) the last day of the Forbearance Period and (b) the closing of the transactions under the IPA. Such terms and conditions include, without limitation:

- Immediate capital injection of $250,000 into Dealership by Werner TSA or Curtis G. Werner by no later than 2:00 p.m. on January 19, 2012.
- Additional minimum capital injections of $150,000 by no later than the 19th of each following month until the transactions contemplated by the IPA close or the IPA is terminated.
- Such capital injections shall be in the form of bridge loan on the same terms and conditions as the prior bridge loans made by Curtis G. Werner.
- Agreement by the Borrower (or if Borrower has insufficient funds, the Dealership) to pay deferred mortgage loan principal payments at closing under the IPA.
- Satisfactory progress toward closing the transactions under the IPA, which will be determined in WOFCO's sole discretion.

A JM Family Enterprises, Inc. Company 

- Execution of mortgage loan deferral documents in form and substance satisfactory to WOFCO in its sole discretion.
- Dealership is responsible for all legal fees incurred by WOFCO.

As stated in the Indicative Proposal, upon the closing of the Investment and subject to the terms and conditions described below, WOFCO will agree to modify the capital loan to the Dealership and the mortgage loan to the Borrower as follows:

- Modify the mortgage loan by decreasing the interest rate to 5.0% fixed with a 5 year term or to 5.75% with a 7 year term (from the closing date of the Investment) and a 20 year amortization. WOFCO would have the right to require that the full amount of each monthly mortgage payment be paid directly by the Dealership to WOFCO. In addition, in the event of any default by the Borrower under the mortgage loan, each monthly lease payment will be paid by the Dealership directly to WOFCO.
- Modify the capital loan by re-amortizing the outstanding principal balance on the capital loan for a 7 year term (from the closing date of the Investment) and amortization at a variable interest rate of LIBOR +3.0%.
- Modify the capital loan to require Dealership to make an annual principal reduction payment to WOFCO on the capital loan equal to 50% of any net income of the Dealership before tax exceeding $1.75 Million.

The modifications to the WOFCO loans are and shall be subject to the complete satisfaction of all of the following terms and conditions:

- The Investment and all related transactions must be approved by Southeast Toyota Distributors ("SET") and Toyota Motor Sales ("TMS"), and the amount of the Investment must be no less than the greater of (a) $1.5 Million or (b) an amount necessary to satisfy SET's net working capital requirement for the Dealership.
- The General Manager of the Dealership must be approved by SET.
- Werner TSA and its owners must be acceptable to WOFCO from a credit underwriting perspective and have sufficient resources to inject future capital, if needed.
- Agreement by the Dealership to provide monthly operational reporting, including variance analysis and updated, 12 month rolling forecasts.
- Verification that the Investment and all related agreements will not conflict with, and have been approved in accordance with, existing legal documents, including the Operating Agreement of Lighthouse Imports, LLC, and that Flawwoods, LLC has elected not to exercise its right of first refusal in connection with the Investment. Werner TSA must provide its corporate guaranty to WOFCO under the Wholesale Floor Plan Security Agreement limited to $1 Million. The form of such guaranty shall be determined by WOFCO in its sole discretion.
- The Definitive Agreements (as defined below) must in forms that are acceptable to WOFCO in its sole discretion and must be executed and delivered by WOFCO, Borrower, Dealership, Hubler, Werner TSA and any other parties required by WOFCO.
- All JM&A (or respective warranty company) monies must be included as income on the financial statement.
- The Dealership will direct JM&A (or respective warranty company) to direct future payments to WOFCO, in the event of default.

**EXHIBIT "D"**

- Commitment to abide by all terms and conditions of existing and future loan documents, including floor plan repayment obligations. WOFCO capital loan documents will be amended to include new financial covenants that would include a leverage/net worth test, debt service ratio, net cash and/or current ratio test, and a covenant requiring the store to keep a minimum of 100% net working capital as defined by SET and TMS.

- The Dealership would continue to lease the Dealerships' current location and facility from the Borrower pursuant to the current lease agreement, with such modifications to such lease agreement as may be required and approved by WOFC in its sole discretion (the "Lease"). The monthly rent paid by the Dealership to the Borrower under the Lease shall be not more than the exact amount needed to pay the required principal and interest on the Mortgage Loan on a monthly basis, plus an additional amount of up to $30,000 per month (the "Excess Rent") and plus applicable taxes and maintenance (as provided in the Lease).

- Until the outstanding principal balance of the mortgage loan is less than $11 Million, neither the Borrower nor the Dealership shall make or pay any dividends, distributions, loans, salary, bonuses, commissions, fees, disbursements, reimbursements or other compensation or remuneration of any type or kind (collectively, "Disbursements") to Hubler without WOFCO's prior written consent, except: (i) so long as there is no default under any of the loan agreements, the Borrower may make monthly Disbursements to Hubler in an amount not to exceed the Excess Rent each month; and (ii) subject to continuous compliance by the Borrower and the Dealership with the loan agreements, the Dealership may make an annual Distribution to Hubler commencing in 2013, subject to the following:

  - The first $240,000 of any such Distribution will be paid directly to WOFCO on behalf of the Borrower to reduce the mortgage principal balance; and
  - Fifty percent (50%) of any amount exceeding $240,000 will be paid directly to WOFCO on behalf of the Borrower to reduce the mortgage principal balance.

- Distributions related to/for Hubler's individual income tax liability due to the operation of the Dealership and Borrower will be allowed provided the related tax liability is properly documented in Hubler's annual income tax return, which will be provided to WOFCO on an annual basis.

All obligations of WOFCO hereunder are specifically contingent on (i) the satisfaction of all of the terms and conditions set forth in this letter and (ii) the consummation of the Investment and the closing of the transactions under the IPA on or prior to the last day of the extended "Forbearance Period" (as defined in the Forbearance Agreement) as such date shall not be extended except in writing by WOFCO in its sole discretion. All modifications to the loan documents, all documents related thereto and all transaction documents relating to the Investment (collectively, the "Definitive Agreements") must be in form and substance satisfactory to WOFCO in its sole discretion. In addition, WOFCO reserves the right to terminate any obligation it has hereunder at any time in WOFCO's sole discretion if the terms and conditions hereof are not complied with or if a default occurs by any Borrower Party under the Forbearance Agreement, any loan document or any other agreement between WOFCO and any of the Borrower Parties which entitles WOFCO to terminate (or automatically results in the termination of) the Forbearance Period under the Forbearance Agreement. This Loan Document Modification Proposal supersedes and replaces the Indicative Proposal.

Nothing in this letter changes any of the terms of the loan documents or any other agreement between WOFCO and any of the Borrower Parties, all of which remain in full force and effect as written.

Respectfully Submitted:

WORLD OMNI FINANCIAL CORP.

By:

Name:   William Shope
Title:    Vice President of Portfolio Management

ACCEPTED AND AGREED:

Howard R. Hubler, Individually

Howard F. Hubler as Member on behalf of
Lighthouse Imports, LLC.

Howard F. Hubler as Member on behalf of
LHT Real Estate, LLC.

**EXHIBIT "D"**



**WORLD OMNI**

World Omni Financial Corp.
190 Jim Moran Boulevard
Deerfield Beach, Florida 33442
(954) 429-2200

June 4, 2012

Howard F. Hubler
Lighthouse Imports, LLC
LHT Real Estate, LLC
2995 U.S. Hwy 1 South
St. Augustine, FL 32086

Dear Mr. Hubler:

This letter pertains to the Forbearance Agreement (the "Agreement") executed on September 30, 2011 between World Omni Financial Corp. ("WOFCO"), Lighthouse Imports, LLC (the "Dealership"), LHT Real Estate, LLC (the "Borrower") and Howard Hubler ("Hubler"). The Dealership, the Borrower and Hubler are collectively referred to as the "Borrower Parties." Unless otherwise defined in this letter, all capitalized terms used in this letter have the meanings given to such terms in the Agreement.

Pursuant to letters from WOFCO to Borrower Parties dated December 2, 2011 (the "December Extension"), January 19, 2012 (the "January Extension"), and April 3, 2012 (the "April Extension") and subject to certain terms and conditions, the Forbearance Period under the Agreement was extended to May 15, 2012.

In connection with the January Extension, WOFCO provided to Borrower Parties that certain Loan Document Modification Proposal letter dated January 19, 2012 (the "Loan Document Modification Proposal") pursuant to which WOFCO outlined the potential terms and conditions upon which WOFCO may modify the loans to the Borrower Parties.

At this time, WOFCO is willing to further extend the Forbearance Period until July 15, 2012, provided that (i) WOFCO determines in its sole discretion that the Borrower Parties continue to make satisfactory progress towards a closing of the transactions contemplated by the Interest Purchase Agreement (the "IP Agreement") dated August 24, 2011 with Werner TSA, LLC ("Werner TSA"), and (ii) WOFCO reserves the right to terminate the Forbearance Period at any time in WOFCO's sole discretion (A) if a default occurs by any Borrower Party under the Agreement, any Loan Document or any other

*A JM Family Enterprises, Inc. Company* 

June 4, 2012
Page 2 of 3

agreement between WOFCO and any of the Borrower Parties which entitles WOFCO to terminate (or automatically results in the termination of) the Forbearance Period under the Forbearance Agreement, or (B) if any of the terms and conditions of the Loan Document Modification Proposal are not fully complied with by the Borrower Parties or Werner TSA. In addition, in the event that the IP Agreement is terminated without a closing, the Forbearance Period will terminate immediately.

The Loan Document Modification Proposal is hereby modified in the following respects (with capitalized terms used and not defined to have the meanings set forth in the Loan Document Modification Proposal):

    1.  The second bullet point on page 1 of the Loan Document Modification Proposal requires Werner TSA or Curtis G. Werner to make certain additional minimum capital injections into Dealership. Such provision is hereby modified to require Werner TSA or Curtis G. Werner to make additional minimum capital injections of $150,000 into Dealership by no later than the 19th of each following month through and including April 19, 2012, and thereafter Werner TSA or Curtis G. Werner will make such additional minimum capital injections into Dealership as needed to fund all cash requirements of the Dealership through closing of the IP Agreement or until the IP Agreement is terminated.

    2.  The second bullet point after the first full paragraph on page 2 of the Loan Document Modification Proposal provides that the capital loan will be re-amortized over a 7 year term (from the closing of the Investment) and a 7 year amortization. Such provision is hereby modified to provide that the capital loan will be re-amortized over a 66 month term and a 66 month amortization at a variable interest rate of LIBOR plus 3.0%.

Nothing in this letter changes any of the terms of the Loan Documents or any other agreement between WOFCO and any of the Borrower Parties, all of which remain in full force and effect as written. Except for the extension of the Forbearance Period as described above, nothing in this letter changes any of the terms or conditions of the Agreement, all of which remain in full force and effect as written. Except for the modifications described in numbered paragraphs 1 and 2 above, nothing in this letter changes any of the terms or conditions of the Loan Document Modification Proposal, all of which remain in full force and effect as written. Nothing in this letter constitutes a waiver by WOFCO of any past or present default by any Borrower Party or of any of WOFCO's rights or remedies under the Agreement, the Loan Documents, the Loan Document Modification Proposal or any other agreement between WOFCO, on the one hand, and any of the Borrower Parties, on the other hand, or provided by law.

June 4, 2012
Page 3 of 3

Please sign below and return a copy of this letter to WOFCO for its records. Please feel free to call me with any questions or comments at 954-429-2414.

Sincerely,

William Shope
Vice President, Portfolio Management
World Omni Financial Corp.

ACCEPTED AND AGREED:

LIGHTHOUSE IMPORTS, LLC

By:
Name:  Howard F. Hubler
Title:  Manager

LHT REAL ESTATE, LLC

By:
Name:  Howard F. Hubler
Title:  Manager

Howard F. Hubler, individually

cc:

Curtis Werner
Werner Allen TSA, LLC
200 Mansell Court East Suite 510
Roswell, GA 30076

EXHIBIT "E"